**Harry C. HOOVER, Jr., C.D. Townsend, and Central Petroleum Corp., Appellants,**

v.

**William H. GREGORY, Gregory Government Securities, Inc., Gregory Investment and Management, and Dean C. Richardson, Appellees.**

No. 05–91–00643–CV.

Court of Appeals of Texas, Dallas.

June 3, 1992.

Rehearing Denied July 10, 1992.

Claude R. Wilson, Jr., Susan P. Mueller, Dallas, for appellants.

Delbert D. Miller, Seattle, R. Matthew Molash, Dallas, for appellees.

Before LAGARDE, OVARD, and BURNETT, JJ.

## OPINION

OVARD, Justice.

Appellants Harry C. Hoover, Jr., C.D. Townsend, and Central Petroleum Corporation appeal the trial court's award of summary judgment based on limitations in favor of appellees, William H. Gregory, Gregory Government Securities, Inc., Gregory Investment and Management, and Dean C. Richardson. Appellants sued appellees in connection with a tax-shelter package they purchased from appellees. In two points of error, appellants argue that (1) the statute of limitations had not run on their claims against appellees and (2) the trial court should have assessed sanctions against appellees because appellees' motion for summary judgment was groundless and was either brought in bad faith or for the purpose of harassment. We overrule appellants' points and affirm the trial court's judgment.

## FACTS

### The Gregory Program

Between 1979 and 1981, appellants entered into "forward contracts" with appellees [1] for the deferred delivery of government-guaranteed mortgage certificates. Appellees sold appellants the forward contracts through a program referred to as the "Gregory Program." Forward contracts are similar to futures contracts but they are not traded on a public exchange. Appellants participated in the Gregory Program to defer tax payments.

In 1981, the Internal Revenue Service (IRS) began investigating the Gregory Program. It disallowed the tax deductions taken under the Program and issued Notices of Deficiency to each of the appellants. The Notices informed appellants that their Gregory Program deductions had been disallowed. The Notices stated that the IRS considered the Gregory Program transactions "shams entered into for tax avoidance purposes," that they were "not bona fide," and that they "lack[ed] economic substance."

Each appellant filed a petition in United States Tax Court challenging the IRS's disallowance of their Gregory Program tax deductions. The tax court held that the Gregory Program was a fraudulent tax shelter. *Brown v. Commissioner*, 85 T.C. 968 (1985) (hereinafter referred to as *Brown*). The Ninth Circuit subsequently affirmed *Brown*, and the Supreme Court denied certiorari. *Brown sub nom. Sochin v. Commissioner*, 843 F.2d 351 (9th Cir.), *cert. denied*, 488 U.S. 824, 109 S.Ct. 72, 102 L.Ed.2d 49 (1988) (hereinafter *Brown affirmed*).

On July 11, 1989, appellants filed suit in state court against appellees alleging negligence, breach of fiduciary duties, professional malpractice, deceptive trade practices, fraud, and breach of contract. Appellees filed a motion for summary judgment contending that all of the appellants' claims were barred by the applicable statutes of limitations. The trial court granted the summary judgment motion in favor of appellees.

### The Timetable

The pertinent undisputed dates are as follows:

**1979** Appellee Gregory incorporates Gregory Investment and Management, Inc. and Gregory Government Securities, Inc.

**June 30, 1980** Appellant Central Petroleum enters into its last forward contract with appellees

**May 4, 1981** Appellant Townsend enters into his last forward contract with appellees

**July 2, 1981** Appellant Hoover enters into his last forward contract with appellees

**October 12, 1981** Appellee Gregory informs appellants by letter that IRS is examining Gregory Program tax deductions

**August 26, 1982** IRS sends its Examination Report to appellant Hoover stating that his Gregory Program deductions have been disallowed

**January 11, 1983** **IRS sends Notice of Deficiency to appellant Hoover**

**March 24, 1983** Appellant Hoover files petition in U.S. Tax Court challenging the disallowance

**November 2, 1983** IRS sends its Examination Report to appellant Townsend stating that his Gregory Program deductions on his 1980 tax return have been disallowed

---

1. Although each of the appellees played a somewhat distinct role in the Gregory Program, they are treated collectively in Appellants' petition and will be treated collectively for purposes of this appeal. For the record, however, we note their separate functions:

   William H. Gregory—incorporated Gregory Investment and Management, Inc. and Gregory Government Securities, Inc.

   Gregory Investment and Management, Inc.—an investment advisor organized to manage its clients' accounts in U.S. Government securities
   Gregory Government Securities, Inc.—a broker/dealer that was a party to the forward contracts entered into by appellants
   Dean C. Richardson—an independent broker/dealer who presented the Gregory Program to appellant Hoover

**May 23, 1984** Appellant Townsend files petition in U.S. Tax Court challenging the disallowance

**June 27, 1984** IRS sends its Examination Report to appellant Townsend stating that his Gregory Program deductions on his 1981 and 1982 tax returns have been disallowed

IRS sends its Examination Report to appellant Central Petroleum stating that its Gregory Program deductions have been disallowed

**October 24, 1984 IRS sends Notice of Deficiency to appellant Central Petroleum**

**November 14, 1984** Appellant Central Petroleum files petition in U.S. Tax Court challenging the disallowance

**April 9, 1985 IRS sends Notice of Deficiency to appellant Townsend**

**December 18, 1985** The Tax Court holds that the Gregory Program was a fraudulent tax shelter in *Brown*

**March 29, 1988** The Ninth Circuit affirms *Brown* on appeal in *Brown affirmed*

**October 3, 1988** The Supreme Court denies application for certiorari on *Brown*

**July 11, 1989 Appellants file suit against appellees**

**August 1, 1990** The trial court enters summary judgment in favor of appellees Gregory Government Securities, Inc., Gregory Investment and Management, Inc., and Dean C. Richardson

**February 28, 1991** The trial court enters summary judgment in favor of appellee William H. Gregory

## STATUTE OF LIMITATIONS ANALYSIS

### Standard of Review

■ Summary judgment may be rendered only if the pleadings, depositions, admissions, and affidavits show (1) that there is no genuine issue as to any material fact, and (2) that the moving party is entitled to judgment as a matter of law. TEX. R.CIV.P. 166a(c); *Rodriguez v. Naylor Indus., Inc.,* 763 S.W.2d 411, 413 (Tex.1989). Therefore, appellees, as defendants in the trial court and movants in the summary judgment proceeding, must either (1) disprove at least one element of each of the appellants' theories of recovery, or (2) plead and conclusively establish each essential element of an affirmative defense, thereby rebutting appellants' causes of action. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 679 (Tex. 1979). Statute of limitations is an affirmative defense. TEX.R.CIV.P. 94. Thus, appellees bear the burden of pleading and conclusively establishing each essential element of their plea of limitations. *See Id.; Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 517 (Tex.1988).

### Application of the Discovery Rule

■ A party seeking to avail itself of the discovery rule must plead it. *Woods,* 769 S.W.2d at 518. Although appellants did not openly plead the discovery rule, in their petition and briefs, they argue that they did not know they had causes of action until the Tax Court decided *Brown* in 1985. In effect, appellants argue that their causes of action arose when they discovered the nature and the amount of their injuries. Appellees argued consistently throughout their briefs and oral argument that the discovery rule determined accrual of appellants' causes of action. Since the legal effect of a pleading is determined by its substance, allegations, and evident purpose, we will apply the discovery rule as though appellants pleaded it. *See St. Louis S.W. Ry. v. Duke,* 424 S.W.2d 896, 899 (Tex.1967); *Hawkins v. Anderson,* 672 S.W.2d 293, 295 (Tex.App.—Dallas 1984, no writ).

■ The discovery rule provides that limitations run from the date the plaintiff discovers or should have discovered, in the exercise of reasonable care and diligence, the nature of the injury. *Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex.1988). "Discovery" also occurs when a plaintiff had knowledge of such facts as would cause a reasonably prudent person to make an inquiry that would lead to discovery of the cause of action.

It is not necessary that a party should know the details of the evidence by

which to establish his cause of action; it is enough that he knows that a cause of action exists in his favor, and when he has this knowledge it is his own fault if he does not avail himself of those means which the law provides for prosecuting or preserving his claim.

*Citizens State Bank v. Shapiro*, 575 S.W.2d 375, 385 (Tex.App.—Tyler 1978, writ ref'd n.r.e.). The discovery rule expressly mandates the plaintiff to exercise reasonable diligence to discover facts of negligence or omission. *Willis*, 760 S.W.2d at 645–46; *Black v. Wills*, 758 S.W.2d 809, 815 (Tex.App.—Dallas 1988, no writ).

## DISCOVERY AND ACCRUAL OF APPELLANTS' CAUSES OF ACTION

Appellants complain on appeal that the trial court erred in granting appellees' motion for summary judgment based upon limitations. Appellants argue that their causes of action could not have accrued until the IRS Commissioner made a final "assessment" of their tax deficiency. Appellants contend that the "assessment" in this case did not take place with regard to appellant Hoover until November 7, 1988, and never took place at all with regard to appellants Townsend and Central Petroleum. They conclude that their petition, filed on July 11, 1989, was timely with respect to all their causes of action.

In addition, appellants argue that their causes of action are not time barred because they did not arise until the tax court decided *Brown* on December 18, 1985. Appellants insist they did not and could not have discovered their injuries until after the *Brown* court conclusively decided appellees' fraud and negligence.

Furthermore, they claim that the statutes of limitations on all of their claims were tolled until the Ninth Circuit affirmed *Brown* in *Brown affirmed* on March 29, 1988. Appellants conclude that their petition against appellees, filed on July 11, 1989, was timely with respect to the statutes of limitation applicable to each of their causes of action. Appellants rely primarily on the decisions in *Atkins v. Crosland*, 417

S.W.2d 150 (Tex.1967), and *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154 (Tex. 1991).

Appellees counter that the trial court properly granted summary judgment based on limitations. Applying the discovery rule, appellees argue that appellants' causes of action accrued at the time they were discovered or could have been discovered with reasonable diligence. Appellees contend that at the very latest, appellants discovered or should have discovered their causes of action between January 1983 and April 1985, when the IRS sent Notices of Deficiency to the appellants. Appellees maintain that appellants' suit was filed more than four years after their causes of action accrued, taking them out of the longest applicable statute of limitation. Appellees rely on the discovery rule and attempt to distinguish *Atkins* and *Hughes*.

Because we determine that the Notices of Deficiency announced facts from which appellants discovered or with reasonable diligence could have discovered their injuries, we conclude that the trial court properly granted summary judgment because each of appellants' claims was barred by the applicable statutes of limitations. We rely on *Atkins* in our determination of accrual. In addition, we interpret *Hughes* narrowly and decide that its application should be limited to cases involving *legal* malpractice.

### Atkins v. Crosland

Appellants contend that *Atkins v. Crosland* governs this case. In *Atkins*, Roy D. Atkins hired Robert E. Crosland, an independent accountant, to prepare his 1960 income tax returns. Crosland prepared Atkins's returns using the cash method of accounting rather than the accrual method. The evidence indicated that although Crosland had attempted to prepare the returns by the cash method, he was unable to file the returns under that method because he failed to secure the consent of the Commissioner of Internal Revenue as required by the IRS Code. Accordingly, Crosland calculated Atkins's returns by the accrual

method, thereby depriving Atkins of a $12,-297.32 tax savings. *Atkins,* 417 S.W.2d at 151–52.

Atkins sued Crosland for professional malpractice, alleging that Crosland had been negligent in preparing his tax returns. Crosland moved for summary judgment claiming that Atkins's cause of action was barred by the statute of limitations. The trial court granted summary judgment in favor of Crosland, and the Fort Worth Court of Appeals affirmed its judgment. *Atkins v. Crosland,* 406 S.W.2d 263, 264 (Tex.Civ.App.—Fort Worth 1966), *rev'd,* 417 S.W.2d 150 (Tex.1967). The Texas Supreme Court reversed the trial court and the court of appeals, holding that Atkins's action was not barred by the statute of limitations. *Atkins,* 417 S.W.2d at 151.

The court held that Atkins's negligence cause of action did not begin to run until the IRS "assessed" a tax deficiency. The court concluded that based upon the facts, Atkins suffered no damage or injury until the IRS assessed a deficiency. It reasoned that:

> If a deficiency had never been assessed, the plaintiff [Atkins] would not have been harmed and therefore would have no cause of action. Thus, the use of the cash method, as opposed to the accrual method, was not in itself the type of unlawful act which, upon its commission, would set the statute in motion. In short, **in the absence of assessment, injury would not have inevitably resulted.**

*Id.* at 153 (emphasis added). *Atkins* clearly focuses on injury—when and how it was established and when it was or could have been discovered. The court determined in *Atkins* that, but for the IRS assessment, Atkins would have sustained no discoverable injury. *See Id.*

In our case, appellants focus on the term "assessment," rather than the injury itself. They argue that *Atkins* establishes a general rule that until tax liability is determined, a taxpayer suffers no harm *and* has no cause of action. We, however, read *Atkins* as establishing a general rule that a taxpayer's cause of action accrues on a fact specific basis when he discovers a risk of

harm to his economic interests, whether that be at the time of assessment or otherwise.

In *Zidell v. Bird,* 692 S.W.2d 550 (Tex. App.—Austin 1985, no writ), the Austin Court of Appeals agreed with our interpretation of *Atkins.* The court construed *Atkins* in line with the "legal injury" rule. Citing *Atkins,* the court pointed out that when a defendant's act is not originally "unlawful," the plaintiff's cause of action does not accrue until a

> specific event, occurring subsequent to the date of defendant's conduct and caused thereby, **made it apparent that some legally protected interest in the plaintiff had indeed been exposed to a specific and concrete risk of harm** which had theretofore remained only a logically possible consequence of defendant's conduct.

*Id.* at 556 (emphasis added). The focal point in the *Zidell* analysis is creation and notice of a *risk* of harm, not a finally established or inevitable harm. *Id.* at 557. The court concluded that the *Atkins* "assessment" did not represent inevitable injury to Atkins because *it might not have been sustained after administrative and judicial adjudication. Id.* Thus, contrary to appellants' contentions here, the *Zidell* court, relying on *Atkins,* rejected the notion that a taxpayer's cause of action does not accrue until *all* administrative and judicial challenges are exhausted. *Id.* Instead, it correctly relies on discovery of a risk of harm. *See Id.*

Further, we find persuasive the Court of Appeals of Maryland's decision in *Leonhart v. Atkinson,* 265 Md. 219, 289 A.2d 1 (1972). As in *Atkins,* the Leonharts sued Atkinson for professional malpractice because he failed to obtain the necessary consent from the IRS to submit their returns using the cash method rather than the accrual method of accounting. Upon receiving the Leonharts' returns, which included unauthorized cash-method calculations, the IRS notified them that in order to comply with the law, they would have to pay additional tax. Almost two years later, the IRS advised the Leonharts that a

substantial deficiency had been assessed against them. The Leonharts challenged the assessment in the United States Tax Court and obtained an adverse ruling.

After exhausting all efforts to get the assessment overturned, the Leonharts brought suit against Atkinson on April 1, 1971, almost eight years after the IRS notified them of their tax deficiency. Atkinson filed a special plea claiming the action was barred by limitations as the statute began running when the IRS notified the Leonharts of their tax deficiency. As in the instant case, the Leonharts, in opposition, argued that the action was not barred by limitations, claiming that the statute did not begin running until the tax court affirmed the assessment.

Accepting the *Atkins* rationale, the court rejected the Leonharts' position and held that their cause of action accrued when the IRS notified them of a tax deficiency, not when it assessed a final grand total. *Leonhart*, 289 A.2d at 5. The court found that

> any reasonable and prudent man, being in the place of the appellants, would have known or certainly should have known [when they received **notice of the tax deficiency**], that he had sustained legal harm as of that date. . . .

*Id.* (citing *Feldman v. Granger*, 255 Md. 288, 257 A.2d 421, 424 (1969) (emphasis added)).

We agree with the *Zidell* and *Leonhart* rationale. And, in accordance with *Atkins* we conclude that appellants' causes of action accrued when they were or should have been aware with reasonable diligence that there was some concrete and specific risk of harm to their legally protected interests.

Discovery of Appellants' Causes of Action

Based on our discussion above, we determine that appellants' causes of action ac-

crued when they knew or should have known with reasonable diligence that there was some concrete and specific risk of harm to their legally protected economic interest. After carefully reviewing the record, we conclude that upon receipt of the Notices of Deficiency, each appellant knew or should have known that there was a risk of harm that the Gregory Program deductions were unacceptable and that the IRS was assessing a deficiency against them.

The Notices of Deficiency included a statement explaining how the deficiency was figured. They specifically informed appellants that the IRS was claiming that the Gregory Program transactions were "shams entered into for tax avoidance purposes," were "not bona fide," and "lack[ed] economic substance."[2] The Notices also included calculation of "income tax liability required to be shown on return," "underpayment," and penalty additions. Finally, the Notices showed the calculated deficiency.

After receiving the Notices, appellants knew or should have known that appellees' negligence, breach of fiduciary duty, malpractice, deceptive trade practices, fraud, and breach of contract, if any, had caused them the risk of concrete and specific harm to their legally protected economic interests. Accordingly, we hold that appellants' causes of actions accrued as of the date of their Notice of Deficiency:

Appellant Hoover—January 11, 1983

Appellant Central Petroleum—October 24, 1984

Appellant Townsend—April 9, 1985[3]

Tolling of the Statutes of Limitations

In addition to arguing that their causes of action did not accrue until *Brown* was

---

**2.** Each appellant received a separate Notice informing him of his individual deficiencies; however, the language of all the Notices is substantially the same and contains the quoted language. A copy of appellant Hoover's Notice of Deficiency is attached to the opinion as Exhibit A. The record indicates that appellant Hoover made the notations that appear on the fifth page of the Notice.

**3.** Although the evidence demonstrates that appellant Townsend received his initial Notice of Deficiency on February 24, 1984, we base our calculations on the date he received a second notice, April 9, 1985.

decided in 1985, appellants contend that the statutes of limitations of their actions were tolled until the Ninth Circuit's final determination of *Brown* on March 29, 1988, in *Brown affirmed.* Appellants point to the recent decision by the Supreme Court of Texas in *Hughes v. Mahaney & Higgins,* 821 S.W.2d 154 (Tex.1991), to support this contention. Appellees respond that *Hughes* is not applicable to this case. They take the position that this is a fraud case and that *Hughes* is applicable only to legal malpractice cases.

### Hughes v. Mahaney & Higgins

*Hughes* is a legal malpractice case. James and Patti Hughes sued attorney Robert M. Mahaney, his partner, and his law firm, alleging causes of action under the DTPA and negligence. The suit stemmed from Mahaney's representation of the Hugheses in an adoption and parental-rights-termination action. Mahaney filed a motion for summary judgment against the Hugheses' claims asserting that it was barred by the statute of limitations. The trial court granted Mahaney's motion, and the Waco Court of Appeals affirmed its judgment.

The Texas Supreme Court reversed the trial court and the court of appeals. It held that the Hugheses' claims were not barred by limitations because the applicable statute was tolled until all appeals were exhausted on the underlying suit in which the malpractice allegedly occurred. The court reasoned that if an attorney commits malpractice while providing legal services in the prosecution or defense of a claim that results in litigation, the legal injury and discovery rules can force the client into the untenable conflict of adopting inherently inconsistent litigation postures in the underlying case and in the malpractice case:

> Had the Hugheses sued Mahaney for malpractice while seeking to overturn the Waco court of appeals decision, they would have been placed in the position of claiming that Mahaney committed malpractice in the handling of their termination of parental rights suit and that,

but for Mahaney's negligence, the termination of parental rights and subsequent adoption would have succeeded. In pursuing their appeal of the underlying claim, however, the Hugheses had to make the inconsistent claim that Mahaney's actions were correct, or, at least not fatal to their claims. As a result of this conflict, the likelihood of their success would have been compromised.

*Hughes,* 821 S.W.2d at 157. The Court concluded that "limitations are tolled for the second cause of action because the **viability of the second cause of action depends on the outcome of the first.**" *Id.* (emphasis added). Moreover, the Court used specific language designed to limit *Hughes's* application to legal malpractice claims against an attorney in the course of litigation:

> Therefore, we hold that **when an attorney commits malpractice in the prosecution or defense of a claim that results in litigation,** the statute of limitations **on the malpractice claim** against the attorney is tolled until all appeals on the underlying claim are exhausted.

*Id.* (emphasis added).

We interpret *Hughes* narrowly as controlling in legal malpractice cases when a malpractice suit is brought against an attorney in the course of litigating the complainant's underlying claim. We recognize the uniqueness of the confidential relationship between an attorney and a client and determine that it is the special nature of this relationship that the *Hughes* court intended to protect.

We do not believe *Hughes* to be applicable to the instant case. Specifically, we conclude that resolution of the appellants' tax case is not dispositive of their complaints that appellees acted negligently, breached their fiduciary duty, engaged in deceptive trade practices, committed fraud, or breached their contracts.

With regard to appellants' claims against appellees for professional malpractice, appellants urge this Court to extend the *Hughes* analysis to *all* malpractice actions, not to limit it to *legal* malpractice actions. Our research reveals no case in which the

Supreme Court of Texas has extended *Hughes* to include malpractice actions other than legal malpractice.[4] We decline the invitation to expand Texas law past the limits the Texas Supreme Court has expressly placed upon it. *See Swilley v. McCain*, 374 S.W.2d 871, 875 (Tex.1964). Accordingly, we construe *Hughes* narrowly and conclude it is not applicable to appellants' causes of action against appellees.

### Accrual of Appellants' Causes of Action

### Two–Year Statutes—Negligence, Breach of Fiduciary Duty, Malpractice, and DTPA

Appellants' tort causes of action for negligence, breach of fiduciary duty, malpractice (professional negligence), and DTPA violations have two-year statutes of limitations. *See* Tex.Civ.Prac. & Rem.Code Ann. § 16.003 (Vernon 1986) (negligence); *Redman Indus. v. Couch*, 613 S.W.2d 787, 789 (Tex.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.) (breach of fiduciary duty); *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex. 1988) (malpractice); Tex.Bus. & Com.Code Ann. § 17.565 (Vernon 1987) (DTPA).

■ Normally a tort cause of action accrues when the allegedly tortious act is committed. *See Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990). This rule is followed despite difficulty in ascertaining damages until a later date. *Id.; Atkins*, 417 S.W.2d at 153. Consequently, appellants' tort causes of action accrued, if at all, in 1980–1981, when the Gregory Program allegedly failed to enter into forward contracts that would yield expected tax benefits and survive IRS scrutiny.

Application of the discovery rule tolls the normal accrual period until appellants discovered or should have discovered in the exercise of reasonable care and diligence the facts that gave rise to their causes of action. *Willis*, 760 S.W.2d at 644. As discussed above, we determine that the IRS

Notices of Deficiency triggered this knowledge.

Therefore, appellant Hoover's tort causes of action accrued, if at all, on January 11, 1983, and, according to the two-year statute, expired in January 1985, approximately four and one-half years before he filed suit. Appellant Central Petroleum's tort causes of action accrued, if at all, on October 24, 1984, and, according to the two-year statute, expired in October 1986, approximately two and one-half years before it filed suit. Appellant Townsend's tort causes of action accrued, if at all, at the latest, on April 9, 1985, and, according to the two-year statute, expired in April 1987, approximately two years and three months before he filed suit. All of appellants' tort causes of action are barred by the applicable statutes of limitations.

### Four–Year Statutes—Fraud and Breach of Contract

■ Appellants' causes of action for fraud are governed by a four-year statute of limitations. *Williams v. Khalaf*, 802 S.W.2d 651, 658 (Tex.1990). Normally, a fraud cause of action accrues when the defendants make false representations or omissions. *Woods*, 769 S.W.2d at 517; *Quinn v. Press*, 135 Tex. 60, 140 S.W.2d 438, 440–41 (1940). Appellants' fraud causes of action accrued, if at all, in 1980 during Gregory Program negotiations when appellees allegedly made false misrepresentations or omissions that allegedly caused appellants to participate in the Program.

Application of the discovery rule tolls the normal accrual until appellants received their IRS Notices of Deficiency. Upon receipt of these Notices, we determine appellants discovered or should have discovered in the exercise of reasonable diligence that appellees had made false representations or omissions.

Under our determination, appellant Hoover's fraud cause of action accrued, if at

---

**4.** The only application of *Hughes* thus far has been in *Gulf Coast Investment Corp. v. Brown*, 821 S.W.2d 159, 160 (Tex.1991) and *Aduddell v. Parkhill*, 821 S.W.2d 158, 159 (Tex.1991). We note, however, that because *Brown* and *Aduddell* are legal malpractice case, they did not require the court to extend its holding in *Hughes*.

all, on January 11, 1983, and expired in January 1987, approximately two and one-half years before he filed suit. Appellant Central Petroleum's fraud cause of action accrued, if at all, on October 24, 1984, and expired in October 1988, approximately six months before it filed suit. Appellant Townsend's fraud cause of action accrued, if at all, on April 9, 1985, and expired in April 1989, approximately three months before he filed suit. All of appellants' fraud causes of action are barred by the applicable statutes of limitations.

Appellants' causes of action for breach of contract are also governed by a four-year statute of limitations. TEX.CIV. PRAC. & REM.CODE ANN. § 16.004 (Vernon 1986). Contract claims generally accrue when the contract is breached. *Wichita Nat'l Bank v. United States Fidelity & Guar. Co.*, 147 S.W.2d 295, 297 (Tex.Civ. App.—Fort Worth 1941, no writ). A breach occurs when a party fails to perform a duty required by the contract. Here, the alleged breach was appellees' purported failure in 1980–1981 to enter into forward contracts which would create expected tax benefits and survive IRS scrutiny.

Applying the discovery rule and our determination of accrual to the normal breach of contract accrual, appellant Hoover's limitations period expired about two and one-half years before he filed suit, appellant Central Petroleum's limitations period ran about six months before it filed suit, and appellant Townsend's limitations period terminated about three months before he filed suit. All of appellants' breach of contract causes of action are barred by statutes of limitations.

## CONCLUSION

We hold that all appellants' causes of action against appellees are barred by the applicable statutes of limitations. We overrule appellants' first point of error. Because we find merit in appellees' motion for summary judgment, we hold that the trial court did not err in failing to assess sanctions against appellees under rule 13 of the Texas Rules of Civil Procedure. TEX.R.CIV.P. 13; *See Caserotti v. State Farm Ins. Co.*, 791 S.W.2d 561, 566–67 (Tex.App.—Dallas 1990, writ denied).

We overrule appellants' second point of error and affirm the trial court's judgment.

## EXHIBIT A

Internal Revenue Service

Department of the Treasury

District
Director

1100 Commerce St Dallas Texas 75242

Person to Contact:

V. Finch
Telephone Number:

(214) 767-1452
Refer/Reply to:

CERTIFIED MAIL

E:R:90-D:308
Date

JAN 11 1983

Harry C. & Emily Hoover, Jr.
3528 University Blvd.
Dallas, TX 75205

DEPOSITION
EXHIBIT
63

SSN/EIN: 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

| TAX YEAR ENDED | DEFICIENCY | ADDITIONS TO THE TAX SECTION 6653(a) |
|---|---|---|
| December 31, 1980 | $48,044.91 | $2,402.25 |

Dear Mr. & Mrs. Hoover:

We have determined that there is a deficiency (increase) in your income tax as shown above. This letter is a NOTICE OF DEFICIENCY sent to you as required by law. The enclosed statement shows how we figured the deficiency.

If you want to contest this deficiency in court before making any payment, you have 90 days from the above mailing date of this letter (150 days if addressed to you outside of the United States) to file a petition with the United States Tax Court for a redetermination of the deficiency. The petition should be filed with the United States Tax Court, 400 Second Street NW., Washington, D.C. 20217, and the copy of this letter should be attached to the petition. The time in which you must file a petition with the Court (90 or 150 days as the case may be) is fixed by law and the Court cannot consider your case if your petition is filed late. If this letter is addressed to both a husband and wife, and both want to petition the Tax Court, both must sign the petition or each must file a separate signed petition. You can get a copy of the rules for filing a petition by writing to the Clerk of the Tax Court at the Court's Washington, D.C. address shown above.

If you decide not to file a petition with the Tax Court, we would appreciate it if you would sign, and return the enclosed waiver form. This will permit us to charge your account quickly and will limit the accumulation of interest. The enclosed addressed envelope is for your convenience. If you decide not to sign and return the statement and you do not timely petition the Tax Court, the law requires us to bill you after 90 days from the above mailing date of this letter (150 days if this letter is addressed to you outside the United States.)

P120189 00051

-2-

If you have any questions, please contact the person whose name and telephone number are shown above.

                                        Sincerely yours,
                                        Roscoe L. Egger, Jr.
                                        Commissioner
                                        By

                                        Glenn Cagle
                                        District Director

Enclosures:
Copy of this letter
Waiver
Envelope
tj

P120189 00052

FORM 5564 (Rev. June 1979) | Dept. Internal Revenue Treasury Internal Revenue Service | Symbols DD:DALLAS:E.R:80-D:808

## NOTICE OF DEFICIENCY - WAIVER

**Name and Address of Taxpayer(s)**

Harry C. & Emily Hoover, Jr.
3528 University Blvd.
Dallas, TX 75205

**Kind of Tax**

INCOME

☒ Copy to Authorized Representative

Jack W. Hawkins & Jimmy L. Heinz
1500 Diamond Shamrock Tower
Dallas, TX 75201

| Taxable Year Ended | Increase in Tax | Penalties |
|---|---|---|
| | | DEFICIENCY |
| | | ADDITIONS TO THE TAX SECTION 6653(a) |
| December 31, 1980 | $48,044.91 | $2,402.25 |

I consent to the immediate assessment and collection of the deficiencies (increase in tax and penalties) shown above, plus any interest provided by law. Also, I waive the requirement under section 6532 (a) (1) of the Internal Revenue Code that a notice of claim disallowance be sent to me by certified mail for any overpayment shown on the attached report.

I understand that the filing of this waiver is irrevocable and it will begin the 2-year period for filing suit for refund of the claims disallowed as if the notice of disallowance had been sent by certified or registered mail.

| Signature | | Date |
|---|---|---|
| ▶ | | |
| ▶ | | Date |
| By ▶ | Title | Date |

**Note:** If you consent to the assessment of the deficiencies shown in this waiver, please sign and return this form in order to limit the interest charge and expedite our bill to you. Your consent will not prevent you from filing a claim for refund (after you have paid the tax) if you later believe you are so entitled; nor prevent us from later determining, if necessary, that you owe additional tax; nor extend the time provided by law for either action.

If you later file a claim and the Service disallows it, you may file suit for refund in a District Court or in the U.S. Court of Claims, but you may not file a petition with the U.S. Tax Court.

**Who Must Sign:** If you filed jointly, both you and your spouse must sign. Your attorney or agent may sign this waiver provided such action is specifically authorized by a power of attorney which, if not previously filed, must accompany this form.

If this waiver is signed by a person acting in a fiduciary capacity (for example, an Executor, Administrator, or a Trustee), Form 56, Notice Concerning Fiduciary Relationship, should, unless previously filed, accompany this form.

F120189 00053

If you agree, please sign and return this form. Keep one copy for your records.

FORM 5564 (Rev. 9-79)

| Form 5278<br>(Rev. September 1980) | Department of the Treasury • Internal Revenue Service<br>Statement — Income Tax Changes | Return Form No.<br>1040 | Schedule No.<br>1 |
|---|---|---|---|
| Name(s) of Taxpayer(s)<br>Harry C. & Emily Hoover, Jr. | ☒ Notice of Deficiency ☐ Settlement Computation | | ☐ Other (specify) |

| | | Tax Years Ended | | |
|---|---|---|---|---|
| 1. Adjustments to income | | 12-31-80 | | |
| a. Ordinary Loss | | $106,202.00 | | |
| b. Investment Fees | | 4,000.00 | | |
| c. Medical Expense | | 1,501.22 | | |
| d. | | | | |
| e. | | | | |
| f. | | | | |
| g. | | | | |
| 2. Total adjustments | | $105,703.22 | | |
| 3a. ☒ Taxable income ☐ Adjusted gross income<br>b. As shown in: ☐ Tax table income Amended<br>☐ Preliminary letter ☐ Notice of deficiency ☒ Return as<br>dated _____ dated _____ filed. | | 15,178.07 | | |
| 4. ☒ Taxable income as revised ☐ Tax table income<br>☐ Adjusted gross income as revised as revised | | 120,881.29 | | |
| 5. Tax from ☐ Tax tables ☐ Tax rate<br>X Max. Tax ☐ Schedule TC schedules | | 50,136.01 | | |
| 6. Alternative tax if applicable (from page _____ ) | | | | |
| 7. Tax surcharge | | | | |
| 8. Corrected tax liability (lesser of line 5 or 6, plus line 7) | | 50,136.01 | | |
| 9. Less credits (specify) | a. Political Contributions | 37.50 | | |
| | b. Investment Tax Credit | 24.70 | | |
| | c. | | | |
| 10. Balance (line 8 less amounts on lines 9a through 9c) | | 50,073.81 | | |
| 11. Plus | a. Tax from recomputing prior year investment credit | | | |
| | b. Self-employment tax | 2,097.90 | | |
| | c. | | | |
| 12. Total corrected income tax liability (line 10 plus amounts on lines 11a through 11c) | | 52,171.71 | | |
| 13. Total tax shown on return or as previously adjusted | | 4,127.70 | | |
| 14. Increase or (decrease) in tax (difference between lines 12 and 13) | | $ 48,044.91 | | |
| 15. Additions to the tax (listed below)<br>Section 6653(a) | | $ 2,402.25 | | |

F120189 00054

@ U.S. G.P.O. 1980-620-233/6144                    Form 5278 (Rev. 9-80)

EXPLANATION OF ITEMS

Harry C. & Emily Hoover, Jr.                          Schedule 2
                                                     12-31-80
                                                                    *deferral*

(a & b) It is determined that the gains and losses claimed by you on your
income tax return for 1980 from alleged forward contracts promoted by Gregory
Investments involving government securities cannot be recognized since such
alleged transactions are shams entered into for tax avoidance purposes.

It is determined that the gains and losses claimed by you on your income tax
return for 1980 from alleged forward contracts involving government securities
cannot be recognized, as you have not established that such gains and losses
occurred or occurred in the manner claimed. Moreover, it is determined that
these transactions lack economic substance.

Furthermore, none of the alleged transactions were completed and closed as each
of the alleged transactions in question was but one step in a series of events
which for tax purposes were fully integrated, and constitutes but a single
transaction.

In addition, such transactions do not represent a sufficient change in economic
position to justify recognition for tax purposes of the losses or gains as
claimed, and the purported losses are a distortion of economic reality.

It is also determined that none of the losses claimed by you in connection with
such transactions (whether capital or ordinary), is deductible under Section
165, Internal Revenue Code, because you have not established that such losses
were bona fide, or that the transactions were entered into for profit within
the meaning of that section, but on the contrary, it would appear that they
were entered into solely or primarily to reduce income taxes by converting
short term or ordinary income to capital gain, and defer reporting the same.

                                    *NOT SO*
Also, since the taxpayer's only reason for entering into the transactions
was tax avoidance, amounts paid for investment counseling, commissions and
cancellation fees are not allowable as deductions.

In the alternative, if it is determined that any portion of the claimed losses
from transactions in Government Securities is bona fide and otherwise
allowable, such losses are capital in character.

(c) Due to the increase in the amount of your adjusted gross income, a medical
expense deduction of $150.00 is allowed instead of $1,651.22 as shown on your
amended income tax return for the taxable year ended December 31, 1980.
Accordingly, taxable income is increased $1,501.22.

Your tax liability for 1980 is computed using the maximum tax on personal
service income method which affords you the least possible tax.

                                                          P120189 00055

EXPLANATION OF ITEMS

Harry C. & Emily Hoover, Jr.          Schedule 3
                                             12-31-80

Additions to the Tax

Part of the underpayment of tax for the tax year 1980 is due to negligence or intentional disregard of rules and regulations. Consequently, the 5 percent addition to the tax is charged for that year, as provided by section 6653(a) of the Internal Revenue Code.

| | |
|---|---:|
| Income tax liability required to be shown on return | $52,171.71 |
| (a) Income tax liability shown on return | 4,127.70 |
| Underpayment | $48,044.91 |
| Addition for negligence, 5% of $48,044.91 | $ 2,402.25 |

F120189 00056