COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| ARIS WATER SOLUTIONS, INC., SOLARIS WATER MIDSTREAM, LLC, SOLARIS MIDSTREAM DB-TX, LLC, DEVON ENERGY CORPORATION, DEVON ENERGY PRODUCTION COMPANY, L.P., and STATELINE WATER, LLC, | § § § § § § | No. 08-25-00031-CV Appeal from the 143rd District Court of Loving County, Texas (TC# 23-05-1085) |
| Appellants, | § | |
| v. | § | |
| STATELINE OPERATING, LLC, and STATELINE ROYALTIES, LP, | § | |
| Appellees. | § | |

## MEMORANDUM OPINION

This case is before us on a permissive interlocutory appeal. Appellees Stateline Operating, LLC, and Stateline Royalties, LP (collectively, Stateline) are oil and gas developers, while Appellants Aris Water Solutions, Inc., Solaris Water Midstream, LLC, Solaris Midstream DB-TX, LLC, Devon Energy Corporation, Devon Energy Production Company, L.P., and Stateline Water, LLC (collectively, Aris) drill and operate wastewater disposal wells. Stateline sued Aris for allegedly injecting wastewater into reservoirs from which Stateline was producing oil and gas, causing permanent damage to Stateline's wells and production, and irrevocably lost oil and gas in place.

After conducting substantial discovery, the parties filed cross-motions for summary

judgment on Aris's statute of limitations affirmative defense. The trial court denied both motions but granted Aris permission to pursue an interlocutory appeal as to whether Stateline's claims had accrued based on a "concrete risk of harm." Stateline opposes Aris's petition for interlocutory appeal for multiple reasons. We deny the petition because there are unresolved questions of material fact.

## I. BACKGROUND

### A. Factual background

In 2018, Stateline's predecessors, Flat Creek Royalties, LLC and Flat Creek Resources, LLC (collectively, Flat Creek), acquired mineral interests in certain property in Eddy County, New Mexico. The subject property is located north of Aris's disposal wells and east of a series of oil wells operated by non-party Tap Rock.

In 2019, Flat Creek began preparing its drilling program, which, among other things, considered operational hazards such as wastewater and over-pressurized reservoirs and investigated the potential effects of wastewater on the property.

In 2021, Flat Creek learned from Tap Rock, its neighbor, that wastewater (likely from disposal operations) had affected Tap Rock's drilling operations. Flat Creek adjusted its plans to, as Aris puts it, "add[] contingencies to account for potential produced water" and use a heavier drilling mud. However, Flat Creek never commenced operations and sold its interests to Stateline.

In 2021, Stateline drilled four wells on the subject property. None of the wells experienced interference from pressurized zones. That same year, Aris substantially increased its injection activities, including a facility upgrade that more than doubled one operator's capacity and an expansion from one to four disposal wells by another operator.

In early 2022, Stateline began drilling a second set of wells. In February 2022, a pressurized water flow was encountered in the drilling process. Stateline overcame this problem and completed

2

the wells, which then produced as planned. However, in June 2022, one of the wells began experiencing abnormal water production, which spread to additional wells and reserves by October 2022. According to Stateline, the abnormal water production diminished the value of its interests by approximately $180 million.

### B. Procedural background

Stateline filed suit against Aris on May 3, 2023, bringing claims for negligence, negligence per se, gross negligence, common law and statutory waste, trespass, and private nuisance. The most recent Stateline pleading—its fourth amended petition—expressly denies Aris's statute of limitations defense, asserting that Stateline's causes of action did not accrue until its interests were permanently damaged and that Aris's limitations defense is further barred by fraudulent concealment, the discovery rule, and the continuing tort doctrine.

Following discovery, the parties filed cross-motions for summary judgment on Aris's statute of limitations defense. The applicable limitations period is two years. Aris argued that Stateline's claims are thus barred because they accrued no later than January 2021, when a "concrete risk" of harm from injected wastewater was discovered by Flat Creek. Stateline argued that its claims did not accrue until 2022, when wastewater from Aris's disposal well interfered with its drilling operations.

The trial court held a summary judgment hearing. At the end of the hearing, the trial court found that a fact issue existed, denied both motions, and authorized an interlocutory appeal:

> I am now going to announce the Court's ruling. The Court finds that it does have jurisdiction over the parties and the subject matter. The Court finds that there does exist a fact issue as to the time of accrual of the cause of action for [Stateline]. It is therefore the judgment of the Court to deny and overrule both [Aris's] motion and [Stateline's] cross-motion. Further, the Court does authorize an interlocutory appeal. I do believe that this is a legal issue that warrants an interlocutory appeal.

In its written order, the trial court denied both summary judgment motions, said nothing

3

about whether a fact issue existed, and granted Aris permission to pursue an interlocutory appeal to resolve the following three controlling questions of law:

    a. Did [Stateline's] claims accrue when a concrete risk of harm to [its] property was known?

    b. Did [Stateline's] claims accrue when an investigation of a concrete risk of harm to [its] property was undertaken?

    c. Did [Stateline's] claims accrue when drilling plans were altered as a result of a concrete risk of harm to [its] property?

In its order, the trial court further determined that an immediate appeal "may materially advance the ultimate termination of the litigation because if the court of appeals determines that the answer to any questions of the above is 'yes' [Stateline's] claims are time-barred," in which case "the amount of litigation necessary to conclude this matter will significantly decrease."

Aris subsequently filed a petition for interlocutory appeal asking this Court to decide the above controlling questions identified by the trial court. Stateline filed a response in opposition asserting that (1) unresolved fact issues remain, and in fact "the trial court determined a fact issue prevented summary judgment"; (2) the trial court never ruled on the controlling questions it identified; and (3) no substantial ground for a difference of opinion exists on the controlling questions; rather, Aris "seek[s] to change long-standing Texas law to fit [its] needs in this litigation."

## II. Discussion

### A. Permissive appeals

Permissive appeals are governed by Texas Civil Practice and Remedies Code Section 51.014(d)–(h), Texas Rule of Civil Procedure 168, and Texas Rule of Appellate Procedure 28.3. Such an appeal involves several steps. First, the order being appealed must "identify the controlling question of law as to which there is a substantial ground for difference of opinion," and "state why an immediate appeal may materially advance the ultimate termination of the litigation." Tex. R.

4

Civ. P. 168; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d) (requiring same).

Once the trial court has issued such an order, the party seeking to appeal must file a petition with the court of appeals "argu[ing] clearly and concisely why the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion and how an immediate appeal from the order may materially advance the ultimate termination of the litigation." Tex. R. App. P. 28.3(e)(4); s*ee also* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(f) (requiring same). The controlling question must be solely a question of law unconstrained by procedural or factual issues. *Archibald v. El Paso Orthopedic Surgery Group, P.A*., No. 08-22-00091-CV, 2023 WL 2214184, at *5 (Tex. App.—El Paso Feb. 24, 2023, no pet.) (mem. op.); *see also El Paso Tool & Die Co., Inc. v. Mendez*, 593 S.W.3d 800, 805 (Tex. App.—El Paso 2019, no pet.) (dismissing permissive appeal of summary judgment in part because evidence reflected disputed facts); *Diamond Prods. Int'l, Inc. v. Handsel*, 142 S.W.3d 491, 494 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("The statute does not contemplate permissive appeals of summary judgments where the facts are in dispute.").

Finally, the court of appeals must agree to hear the appeal, which it has discretion to accept or deny. *Sabre Travel Int'l, Ltd. v. Deutsche Lufthansa AG*, 567 S.W.3d 725, 732 (Tex. 2019). Such discretion is exercised consistent with the legislative intent behind § 51.014(d): in favor of "early, efficient resolution of determinative legal issues[.]" *Id*.; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(f) (court of appeals "*may* accept an appeal permitted by [§ 51.014(d)]" if appellant shows why immediate appeal is warranted) (emphasis added); *Ochoa v. Avila*, No. 08-23-00051-CV, 2023 WL 1991579, at *1 (Tex. App.—El Paso Feb. 14, 2023, no pet.) (mem. op.).

If a court of appeals denies a petition for permissive appeal, it must explain why. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(g); Tex. R. App. P. 28.3(l). The Texas Supreme Court may

review the denial *de novo*. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(h); Tex. R. App. P. 28.3(l).

## B. Concrete risk of harm

The controlling questions identified by the trial court ask whether Stateline's claims accrued for purposes of limitations based on a "concrete risk of harm." The parties agree that such an accrual standard—"concrete risk of harm"—has never been applied in the context of an injury to land. Aris argues that such a standard is applicable based on two lines of authority, one involving United States Supreme Court standing law and the other Texas professional malpractice law. We address each in turn.

### (1) Federal standing law

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), the sole standing case Aris mentions, is cited for the proposition that "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" 578 U.S. at 339.

*Spokeo* involved a Fair Credit Reporting Act (FCRA) claim brought against Spokeo, an internet "people search engine," for disseminating incorrect information about the plaintiff. *Id*. at 333. As to whether such a claim could be based on a *risk* of harm, the U.S. Supreme Court explained that the plaintiff could not allege a "bare procedural violation [of the FCRA], divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III [of the United States Constitution]." *Id.* at 341. However, the Court clarified, this does not mean "the risk of real harm cannot satisfy the requirement of concreteness." *Id.* For example, the Court noted, "the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure," such as victims of libel and slander. *Id*. at 341–42. Similarly, more germane to *Spokeo*'s facts, "[t]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," in which case the plaintiff "need not allege any

*additional* harm beyond the one Congress has identified." *Id*. at 342 (emphasis in original). An example of such a statutory right is the right of voters to obtain information Congress made public under the Federal Election Campaign Act of 1971 (FECA). *Id.*

However, even assuming federal standing standards are relevant here, Aris does not suggest that Stateline's alleged injury (interference with its oil wells and flooding of its reserves) is—like harm in a libel, slander, or FECA case—"difficult to prove or measure." Nor did Aris take such a position in the trial court. Moreover, *Spokeo* was ultimately remanded because the Ninth Circuit failed to address "whether the particular procedural [FCRA] violations alleged . . . entail a *degree* of risk *sufficient* to meet the concreteness requirement." *Id*. at 342–43 (emphasis added). Again, assuming *Spokeo* is relevant here, neither Aris's petition for permissive appeal nor its summary judgment briefing below mentions or develops the issue of whether any pertinent risk of harm to Stateline's property entailed a degree of risk sufficient to be "concrete." A similar issue regarding degree of risk arises under Texas law, which we discuss next.

### (2) Texas professional malpractice law

*Murphy v. Campbell*, 964 S.W.2d 265 (Tex. 1997) is the more recent of the two Texas Supreme Court cases in the line of professional malpractice cases Aris relies on for the proposition that "at least in some contexts, . . . a cause of action accrues when a plaintiff discovers 'some *concrete and specific risk* of harm to their legally protected interests.'"[1] *Murphy* involved allegedly faulty tax advice given by an accountant. 964 S.W.2d at 267. The Texas Supreme Court concluded

---

[1] The language quoted here is from *Hoover v. Gregory*, 835 S.W.2d 668, 674 (Tex. App.—Dallas 1992, writ denied) (emphasis by Aris), which Aris cites rather than *Murphy v. Campbell*, 964 S.W.2d 265 (Tex. 1997). In addition to the *Murphy* line of cases, Aris mentions the Texas Supreme Court's opinion in *Regency Field Services, LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807 (Tex. 2021) and our opinion in *ETC Tex. Pipeline, Ltd. v. Ageron Energy, LLC*, 697 S.W.3d 334 (Tex. App.—El Paso 2023, pet. filed), both of which involve limitations defenses in subsurface migration cases. However, as Aris concedes, in *Regency* "other issues . . . form the basis for the ultimate holding," and *ETC* "does not address risk as a legal injury."

that for limitations purposes, this type of conduct is inherently undiscoverable, and thus the discovery rule applies. *Id*. at 271. Accordingly, the court held, a claim based on such conduct accrues "when the claimant knows or in the exercise of ordinary diligence should know of the wrongful act and resulting injury." *Id*.

As to precisely when a claimant might know or be charged with knowledge of such matters, the court observed that "[a]s in most discovery rule cases, the date a particular person becomes charged with knowledge of accounting malpractice involving tax advice depends upon the circumstances." *Id.* The court further noted that a tax dispute typically involves a series of events that provide progressively more information about whether a taxpayer may have been harmed by faulty tax advice:

> The taxpayer learns something of the IRS's position during an audit. The report of the auditor's findings provides the taxpayer additional information, although it does not represent the IRS's final position; the taxpayer may protest to the IRS appeals office within thirty days of receiving the auditor's report. Only after all administrative appeals have been exhausted does the IRS issue a formal deficiency notice. Within ninety days of that notice the taxpayer may challenge the IRS's position in Tax Court. If the taxpayer does not do so, or when that litigation is concluded, the IRS assesses any tax due.

*Id.*

Based on the record before it, the Texas Supreme Court concluded that "the evidence does not establish when plaintiffs knew or should have known that [the accountant]'s advice was flawed." *Id*. at 272. Nevertheless, it held that the applicable two-year limitations period had expired because suit was filed more than two years after the IRS issued the deficiency notice, and a taxpayer is charged with knowledge of faulty tax advice no later than this event. *Id*. (reaffirming that under the discovery rule, when the claimant should know of his injury in this context "cannot occur later than the receipt of the deficiency notice, when the IRS takes a final, formal position. That was our holding in *Atkins v. Crosland*, 417 S.W.2d 150 (Tex. 1967)").

In *Atkins*, the Texas Supreme Court held that an IRS deficiency notice triggered accrual of a faulty tax advice claim, reasoning that issuance of the notice "was the factor essential to consummate the wrong," and "only then was the tort complained of completed." 417 S.W.2d at 153. However, neither *Atkins* nor *Murphy* sheds helpful light on why this particular event—as opposed to earlier events (e.g., initiation of audit, release of audit findings, movement through administrative appeal) or later events (e.g., final judgment by tax court or appellate court)—sufficed to "consummate the wrong" and "complete" the tort. And while this question may be academic in the context of faulty tax advice, given the bright line drawn by *Atkins* and reaffirmed by *Murphy*, the same question is not academic when it comes to addressing whether the reasoning of *Murphy* and *Atkins* might apply in other contexts, such as in this injury-to-land case.

Here, Stateline's oil wells and reserves were allegedly damaged as a result of subsurface migration of wastewater from Aris's disposal wells. The series of events leading up to such a result might arguably include such matters as the original permitting of the relevant wastewater disposal operations, the commencement of such operations, progressive accumulation of wastewater in underground formations, any changes over time in injection activities, over-pressurization or other effects on nearby properties, results of tests performed, and so on. Extending *Murphy*'s reasoning to claims like Stateline's would involve identifying the particular event in such a series that "consummates" the wrong and "completes" the tort, i.e., the particular point in time at which the claimant knew or in the exercise of ordinary diligence should have known of the wrongful act and resulting injury.

Aris neither clearly identifies such an event nor explains why any particular event, as opposed to other events, triggered accrual of Stateline's claims under the discovery rule.[2]

---

[2] Importantly, *Murphy* explains that not all risks suffice to trigger the discovery rule. *See Murphy*, 964 S.W.2d at 273 ("[The] dissent mischaracterizes our application of the discovery rule as holding that 'an accounting malpractice cause

Moreover, Aris does not explain how or why this issue would involve a question of law, rather than a question of fact. That is, while we agree with Aris that a claim's accrual date for purposes of limitations generally involves a question of law, *see Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 623 (Tex. 2011), the same is not true when the discovery rule applies, in which case a question of fact is generally involved. *See Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998) ("Inquiries involving the discovery rule usually entail questions for the trier of fact."); *see also Burrus v. Reyes*, 516 S.W.3d 170, 193 (Tex. App.—El Paso 2017, pet. denied) ("The date that a claimant knew or should have known of an injury is generally a fact question."). And this is not the only fact question at play in this case, as we discuss next.

## C. Fact question as to timing of relevant conduct

The *Murphy* line of cases holds that a claim may accrue for purposes of limitations not when a wrongful act is committed but rather when a concrete risk of harm from the act arises at a later point. *See Murphy*, 964 S.W.2d at 271 (reiterating that tax-advice claim accrues upon issuance of IRS deficiency notice).[3] In contrast, this line of authority provides no support for the different proposition that a claim might accrue based on a risk of harm—concrete or otherwise—associated with *future* conduct. Here, Aris insists that its limitations defense is based on past conduct, emphasizing that "[Aris] [is] *not* arguing that the risk of future tortious conduct triggers limitations." In other words, in Aris's view, if Stateline was harmed by Aris's conduct, that conduct

---

of action accrues when a taxpayer knows or should know of a *mere risk* of injury.'") (emphasis in original).

[3] *See also Atkins v. Crosland*, 417 S.W.2d 150, 153 (Tex. 1967) (holding that IRS deficiency notice triggers accrual of tax-advice claim). As to the other cases cited by Aris, *see Hoover*, 835 S.W.2d at 672 (following *Atkins*); *Zidell v. Bird*, 692 S.W.2d 550, 557–58 (Tex. App.—Austin 1985, no writ) (holding that one attorney malpractice claim accrued simultaneously with alleged wrongful conduct and two other claims accrued based on subsequent events); *Prieto v. John Hancock Mut. Life Ins. Co.*, 132 F. Supp. 2d 506, 511, 523 (N.D. Tex. 2001), *aff'd*, 35 Fed. Appx. 390 (5th Cir. 2002), *abrogated on other grounds by Newby v. Enron Corp.*, 542 F.3d 463 (5th Cir. 2008) (holding that claims based on misrepresentations allegedly made in 1983 accrued based on plaintiff's actual knowledge of event that occurred in 1987); *In re Swift*, 198 B.R. 927, 931–32 (Bankr. W.D. Tex. 1996) (holding that attorney malpractice claim accrued based on filing of objection in subsequent bankruptcy case).

took place before May 2021, i.e., more than two years before suit was filed in May 2023.[4]

However, Stateline cites evidence that in 2021, two things happened: (1) Stateline drilled four producing wells on the subject property, and none of them experienced interference from pressurized zones; and (2) Aris increased its injection activities, including a capacity-doubling facility upgrade by one operator and a one-to-four well expansion by another. Stateline further cites evidence that it first encountered a pressurized water flow in early 2022 in the process of drilling a second set of wells. Such evidence creates at least a fact issue as to whether Stateline's wells and mineral interests were harmed by conduct occurring before or after May 3, 2021, the determinative date for purposes of limitations.

## III. CONCLUSION

Because there are unresolved questions of material fact, we deny Aris's petition for interlocutory appeal.

LISA J. SOTO, Justice

April 25, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

---

[4] We quote Aris's response to Stateline's cross-motion for summary judgment, as Aris's petition for permissive appeal does not squarely address this point.