Craig PONDER, M.D., Appellant,

v.

BRICE & MANKOFF, Previously Known as Brice, Mankoff & Barron, a Professional Corporation and Brice & Mankoff, a Professional Corporation, now known as Mankoff & Hill, a Professional Corporation; Mankoff, Hill, Held & Goldburg, P.C.; Ronald M. Mankoff, Individually; and Durant, Mankoff, Davis, Wollens & Francis, a Professional Corporation, Appellees.

No. C14–94–00102–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 1, 1994.

Rehearing Overruled Dec. 29, 1994.

Jimmy Williamson, Houston, for appellant.

Farley P. Katz, Anthony E. Rebollo, C.J. Muller, San Antonio, for appellees.

Before ROBERTSON, CANNON and DAN M. LEE, JJ.

## OPINION

CANNON, Justice.

Appellant, Craig Ponder, M.D. (Ponder) appeals from a summary judgment granted in favor of appellees, attorney, Ronald M. Mankoff (Mankoff), and a group of law firms who included Mankoff as a shareholder or partner. Ponder filed suit alleging that appellees gave him faulty legal advice on the tax consequences of investing in a tax shelter. Ponder raises five points of error contending that the summary judgment was improper. We affirm.

On December 23, 1982, Ponder invested in three partnerships known as the "Mercedes," "Ferrari," and "Rolls" partnerships. These, and numerous other partnerships and corporations, were established under the accrual method of accounting solely for the purpose of dealing with a Brazilian entity known as Coral Sociedad Brasileira De Pesquisa e Desenvolvimento LTD ("Coral"). Coral was formed in 1982 to conduct certain medical research. The research was owned by Coral and was to be done in England. Coral contracted primarily with partnerships to perform the research. The purchase price for each partnership was one-eighth down in cash (U.S. dollars) with the balance covered by a note payable in Brazilian cruzeiros. Although the value of the cruzeiro was greatly inflated against the dollar, the partnership notes were not indexed to inflation.

In 1982, Coral hired Mankoff, a tax attorney, and his law firm to write a legal opinion regarding the tax consequences and benefits for the partnerships investing in Coral. Specifically, Mankoff and his firm were to determine whether a partnership's investment would be a deductible expense under section 174 of the Internal Revenue Code in effect at the time and whether that deduction would include the full amount of the investment in U.S. dollars. In his June 28, 1982, opinion letter, Mankoff concluded, after an extensive analysis of the law and based on certain facts and assumptions discussed therein, that "it is more likely than not that for federal income tax purposes" each partnership would be entitled to the full deduction in U.S. dollars. Mankoff also advised Coral that a U.S. company investing in the medical research "will depend, for federal income tax and other advice concerning this matter, solely and entirely upon its own advisors and not upon the opinions expressed in this letter." Mankoff further cautioned that the opinion letter "is intended solely for the internal use of Coral and, accordingly, is not intended to be, and should not be, relied upon by any person or entity other than Coral." Before investing in the Coral partnerships, Ponder, his financial advisor, and two tax attorneys consulted by Ponder and his advisor, read this opinion letter. Ponder did not personally communicate with Mankoff or any member of his firm prior to making his investment.

On January 3, 1985, Ponder received a letter from the IRS notifying him that the Ferrari partnership had been selected for audit. On October 2, 1985, he received a similar letter regarding the Mercedes partnership. On March 28, 1986, Ponder received two "Notice[s] of Final Partnership Administrative Adjustment" (notice of adjustment) from the IRS formally disallowing all deductions that the Mercedes partnership had claimed for the 1982 and 1983 tax years. The notices of adjustment also informed Ponder that he had ninety days to file a petition to contest the adjustment in the tax court. On April 18, 1986, Ponder signed a document consenting to hire the law firm of Brice & Mankoff to represent the partnership in tax court. On March 27, 1987, Ponder received another notice of adjustment disallowing all deductions he had claimed from the Ferrari and Rolls partnerships for the 1982 tax year. In May 1987, Ponder retained Brice & Mankoff to represent him and his wife, personally, in tax court.

On December 28, 1989, the United States tax court issued an opinion in the "test case" of *Agro Science Co. v. Commissioner,* 58 T.C.M. (CCH) 1093, 1989 WL 155518 (1989),

*aff'd,* 934 F.2d 573 (5th Cir.1991). The tax court held that the partnership notes were not deductible because of the devaluation of the cruzeiro and the lack of a bona fide profit motive. None of Ponder's partnerships were a party to the *Agro* case.

On February 6, 1991, Ponder filed this suit. In his third amended original petition, Ponder alleged the existence of an attorney-client relationship between himself and appellees and alleged that appellees were negligent and grossly negligent with regard to their advice "in connection with the recommendation, selling, marketing, continued retention, and representation before the Internal Revenue Service, representation before the tax court, and all there matters concerning or attendant to the Coral partnerships."[1] Ponder also alleged breach of a fiduciary duty, fraud, and violations of the [Texas] Securities Act, VERNONS ANN CIV.ST. art. 581–1—581–41 (Vernon 1964 & Supp.1994), and the DTPA, TEX.BUS. & COM.CODE ANN. §§ 17.41—17.63 (Vernon 1987 & Supp.1994). In their second amended answer, appellees asserted, among other things, that Ponder's claims were barred by limitations.

On August 20, 1993, appellees filed their amended motion for summary judgment asserting that all of Ponder's claims were barred by limitations, or alternatively, were not actionable as a matter of law. Ponder filed a response asserting that the limitations period had been tolled and that there were material fact issues concerning appellees' liability.

On October 8, 1993, the trial court granted appellees' motion on grounds that all of Ponder's claims were barred by limitations. The court also granted appellees' motion on alternative grounds. The court ruled that appellees' were entitled to judgment as a matter of law on the negligence and breach of fiduciary claims because of a lack of privity. The court also ruled that appellees were entitled to judgment as a matter of law on the fraud, DTPA and Texas Securities Act claims, respectively, because: (1) Ponder "did not rely or did not reasonably rely on the actions of any of the defendants," (2) Ponder was not a consumer under the DTPA, and (3) Ponder's Texas Securities Act claim was not timely filed. After his motion for new trial was denied, Ponder perfected this appeal.

Ponder brings five points of error contending the trial court erred in granting summary judgment. Ponder's first point of error addresses the limitations issue and his remaining points of error separately address each of the alternative grounds relied upon by the trial court. Before considering Ponder's arguments, we note the standard of review for summary judgments.

A movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548–49 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, proof favorable to the non-movant is taken as true, the court indulging every reasonable inference and resolving any doubts in favor of the non-movant. *Id.* In other words, the issue on appeal is not whether the non-movant raised a material issue of fact precluding summary judgment; rather, the issue is whether the movant proved it was entitled to judgment as a matter of law. *See* TEX.R.CIV.P. 166a(c); *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828–29 (Tex.1970). If the appellate court finds that the movant has not met his burden, it must reverse and remand the case for further proceedings. *Id.* To prevail on summary judgment, a defendant, as the movant, must conclusively prove all the elements of an affirmative defense or negate as a matter of law one or more essential elements of the plaintiff's cause of action such that there is no genuine issue of material fact. *See Gibbs,* 450 S.W.2d at 828; *see also Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972).

### Limitations

In their amended motion for summary judgment, appellees, citing *Hoover v. Gregory,* 835 S.W.2d 668 (Tex.App.—Dallas 1992,

---

1. Ponder apparently filed a Fourth Amended Petition that is not included in the record. According to appellees, "the Fourth Amended Petition is essentially the same as the Third Amended Petition, except that it elaborates on certain factual allegations."

writ denied), asserted that Ponder's causes of action accrued when he received the first notices of adjustment and therefore, that Ponder' claims were barred by limitations. The trial court's order recites that appellees amended motion for summary judgment "is granted on all counts on the grounds that the applicable statutes of limitation bar the lawsuit under *Hoover* . . . ."

■ When a defendant moves for summary judgment based on the affirmative defense of limitations, he assumes the burden of showing as a matter of law that the suit is barred by limitations. *Rogers v. Ricane Enter., Inc.*, 772 S.W.2d 76, 80–81 (Tex.1989); *Archambault v. Archambault*, 846 S.W.2d 359, 360 (Tex.App.—Houston [14th Dist.] 1992, no writ), A defendant must prove when the cause of action accrued and must negate the discovery rule if pled. *Archambault*, 846 S.W.2d at 360 (citing *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990)). The question of when a cause of action accrues is a question of law for the court. *Moreno v. Sterling Drug*, 787 S.W.2d 348, 351 (Tex.1990); *Seibert v. General Motors Corp.*, 853 S.W.2d 773, 775 (Tex.App.—Houston [14th Dist.] 1993, writ denied). In applying the statute of limitations, a cause of action is said to accrue when facts come into existence which give a claimant the right to seek a remedy in the courts. *Robinson v. Weaver*, 550 S.W.2d 18, 19 (Tex.1977); *Seibert*, 853 S.W.2d at 776.

■ The general rule is that a tort cause of action accrues when the tort is committed; notwithstanding the fact that the damages or their extent are not ascertainable until a later date. *Atkins v. Crosland*, 417 S.W.2d 150, 153 (Tex.1967). The discovery rule is an exception to the general rule. *Moreno*, 787 S.W.2d at 351; *Seibert*, 853 S.W.2d at 778. The discovery rule tolls the running of the limitations period until the time the plaintiff discovers or through the exercise of reasonable care and diligence, should have discovered the nature of the injury. *Moreno*, 787 S.W.2d at 351. In the instant case, Ponder pled the discovery rule, tolling, and fraudulent concealment or estoppel as defenses to appellees' claim of limitations. Thus, appellees, as the summary judgment movants, had the burden of show-

ing when Ponder's causes of action accrued in light of the discovery rule and of proving as a matter of law that Ponder failed to file suit within the applicable statutes of limitation. The questions before this court are: (1) when did Ponder discover or when should he have discovered his injury? and, (2) if Ponder failed to timely discover his injury, were the statutes of limitation tolled or were appellees estopped from asserting limitations?

### *Hoover* And *Hughes*

■ As we noted, the trial court's ruling is based on *Hoover*. The *Hoover* case involved taxpayers who brought tort and breach of contract claims against the sellers of tax shelter packages that the IRS determined to be shams. 835 S.W.2d at 670. Between 1979 and 1981, the taxpayers, Hoover, Townsend, and Central Petroleum, invested in a tax shelter referred to as the "Gregory Program." *Id.* On January 11, 1983, the IRS sent Hoover a notice of deficiency, disallowing the deductions he claimed on his investment in the Gregory Program. *Id.* Central Petroleum received a similar notice of deficiency on October 24, 1984, and Townsend received his notice of deficiency on April 9, 1985. *Id.* at 671. Each of the taxpayers filed a petition in the United States tax court challenging the disallowance of their tax deductions. *Id.* at 670–71. On December 18, 1985, the tax court held in a test case that the Gregory Program was a fraudulent tax shelter. *Id.* On March 29, 1988, the ninth circuit affirmed the tax court's decision. *Id.*

On July 11, 1989, the taxpayers filed suit claiming that under the discovery rule, they did not, and could not have discovered their causes of action until after the tax court's decision. *Id.* at 671–72. Relying on *Atkins v. Crosland*, the taxpayers claimed their causes of action did not accrue until the tax court's decision "conclusively decided appellees' fraud and negligence." 835 S.W.2d at 672. The sellers of the tax shelter argued that the taxpayers discovered, or should have discovered, their causes of action between January 1983 and April 1985, when the IRS sent notices of deficiency to the taxpayers. *Id.* The sellers asserted that the taxpayers' suit was filed more than four years after

their causes of action accrued, taking them out of the longest applicable statute of limitations. *Id.*

After analyzing *Atkins* and the cases relying on *Atkins,* the *Hoover* court rejected the taxpayers' argument that "a taxpayer suffers no harm and has no cause of action until his tax liability is [finally] determined." 835 S.W.2d at 673. Rather, the court read *Atkins* "as establishing a general rule that a taxpayer's cause of action accrues on a fact specific basis when he discovers a risk of harm to his economic interest, whether that be at the time of assessment or otherwise." *Id.* The court concluded that the taxpayers' causes of action accrued when "they were or should have been aware with reasonable diligence that there was some concrete and specific risk of harm to their legally protected interests." *Id.* at 674. The court held "that upon receipt of the notice of deficiency each taxpayer knew or should have known that there was a risk of harm that the Gregory Program deductions were unacceptable and that the IRS was assessing a deficiency." *Id.*

■ In addition to arguing that their causes of action did not accrue until the tax court case was finally resolved, the taxpayers in *Hoover,* relying upon *Hughes v. Mahaney & Higgins,* 821 S.W.2d 154 (Tex.1991), argued that the statutes of limitations were tolled until the ninth circuit affirmed the tax court's decision. 835 S.W.2d at 674–75. In *Hughes,* the Hugheses sued their attorney, his partner, and the attorney's law firm for negligence allegedly committed by the attorney during his representation of the Hugheses in an adoption and parental rights termination action. 821 S.W.2d at 155–56. The trial court granted summary judgment in favor of the attorney based on the applicable statute of limitations. *Id.* at 156. The court of appeals affirmed the trial court's judgment, holding that under the discovery rule, the Hugheses' cause of action accrued when the appellate court, in the underlying adoption and parental rights termination action, issued its opinion. *Id.*

The supreme court reversed, concluding that the Hugheses' negligence cause of action was not barred because the applicable stat-

ute of limitations was tolled until the underlying action that allegedly gave rise to the negligence, was finally resolved. *Id.* at 157. The court held that "when an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on the malpractice claim against the attorney is tolled until all appeals on the underlying claim are exhausted." *Id.* The court explained "that limitations are tolled for the second cause of action because the viability of the second cause of action depends on the outcome of the first." *Id.*

Interpreting the supreme court's holding, the *Hoover* court held that *Hughes* was inapplicable:

> We interpret *Hughes* narrowly as controlling in legal malpractice cases when a malpractice suit is brought against an attorney **in the course of litigating the complainant's underlying claim.** We recognize the uniqueness of the confidential relationship between an attorney and a client and determine that it is the special nature of this relationship that the *Hughes* court intended to protect.

835 S.W.2d at 675. (emphasis added)

Thus, *Hughes* applies only to a legal malpractice action where such an action has the potential of placing the plaintiff in an inconsistent litigation posture because the underlying litigation that gave rise to the malpractice is still pending. *Hughes,* 821 S.W.2d at 157; *Hoover,* 835 S.W.2d at 675–76.

### *Hoover* Applies

Appellees argue that *Hoover* is controlling. We agree. The facts of this case are nearly identical to those in *Hoover.* Ponder invested in the Coral tax shelter on December 28, 1982. On March 28, 1986, Ponder received the first notices of adjustment from the IRS disallowing all the deductions taken by the Mercedes partnership for the tax years 1982 and 1983. We hold that Ponder's causes of action accrued on March 26, 1986, when Ponder received the first notices of adjustment. At that time, he knew or should have known that there was a risk of harm to his economic interest in that the deductions taken by his partnerships would not be allowed by the

IRS. Ponder asserts that under *Atkins*, injury was not inevitable and therefore, his causes of action did not accrue "until the resolution of the *Agro* case." Ponder's argument is identical to the argument expressly rejected in *Hoover*. We find the reasoning in *Hoover* to be sound and hold that Ponder's cause of action accrued when he received the first notices of adjustment.

Ponder argues that *Hoover* is inapplicable because the notices of deficiency in that case specifically informed the taxpayers that the transactions were "shams entered into for tax avoidance purposes, were not bona fide, and lack[ed] economic substance." In contrast, Ponder points out that he received "notice of financial adjustments to the partnership and nothing more." Ponder argues that this notice alone was insufficient to put him on notice of risk of harm to his economic interests because each investor was aware of the possibility of an IRS challenge when they made the investment. Ponder's arguments are without merit.

It is undisputed that the notices of adjustment informed Ponder that the IRS was disallowing the partnership deductions taken by the Mercedes partnership for the tax years 1982 and 1983. The summary judgment proof shows not only that Ponder was an experienced investor, but also that he obtained advice from his own financial advisor and tax attorney as well as the advisor's tax attorney. Ponder's deposition testimony reflects that he had prior knowledge of the deductions taken by the Mercedes partnership for those years and that he read and understood the significance of the notices of adjustment. The fact that the notices did not state the reason why the IRS disallowed the deductions or that Ponder may have expected an IRS challenge is immaterial. Plainly, a reasonably prudent person in Ponder's position would have been on notice to make inquiry. *See Hoover*, 835 S.W.2d at 671. Ponder claims that inquiries were made but that appellees assured investors that they would succeed against the IRS. In *Leonhart v. Atkinson*, 265 Md. 219, 289 A.2d

1, 4–5 (1972), cited by the court in *Hoover*, the court held that the taxpayers' cause of action for professional malpractice against their accountant accrued when they received the notice of deficiency and that the accountant was not estopped from asserting limitations even though he repeatedly assured the taxpayers during the pendency of their tax court case that the IRS position was incorrect.

The crux of Ponder's entire case is that Mankoff wrongly advised him that the IRS would allow those partnership deductions. Thus, as of the date of the first notices of adjustment, Ponder was aware that he might be subject to certain tax liabilities, contrary to the Mankoff legal opinion he now alleges he relied upon in making the investment. Ponder did not take timely legal action to protect his rights. Because Ponder did not file this suit until February 6, 1991, more than four years after his causes of action accrued and outside the longest applicable statute of limitations, Ponder's causes of action are barred unless the limitations period was tolled under *Hughes*.[2]

### *Hughes* Does Not Apply

Ponder argues that under *Hughes*, his causes of action were tolled during the pendency of the *Agro* case. Ponder asserts that if he had filed his legal malpractice action against appellees, he would have been placed in an inconsistent litigation posture because of appellees' representation of Ponder's interests in the tax court in both the *Agro* case and the case filed by Ponder and his wife in May, 1987. In other words, Ponder's claim that appellees committed legal malpractice by recommending a "sham" investment would be inconsistent with the claim in the *Agro* case and with his claim individually that the investment was "bona fide." For those reasons, Ponder claims that *Hughes* applies. We disagree.

In *Hoover*, it was held that the tax court case was not dispositive of any of the taxpay-

---

**2.** Ponder's tort causes of action for negligence, breach of fiduciary duty and DTPA violations have two-year statutes of limitations. *See Hoover*, 835 S.W.2d at 676 (and the statutes and cases cited therein). Ponder's cause of action for fraud is governed by a four-year statute of limitations. *See id.* (citing *Williams v. Khalaf*, 802 S.W.2d 651, 658 (Tex.1990)).

ers' claims, including their professional malpractice claim. *Id.* at 675–76. Although it did not involve legal malpractice, *Hoover* also held that the tolling principle announced in *Hughes* applies only to legal malpractice actions. *Id.* The instant case involves legal malpractice. However, we find that the *Agro* case concerning the deductibility of losses incurred by other Coral partnerships, while bearing on accuracy of the Mankoff opinion letter and putting Ponder on notice of possible wrongful conduct, was not dispositive of Ponder's claim that appellees' violated Texas law. Thus, the statutes of limitations on Ponder's causes of action for negligence, gross negligence, breach of fiduciary duty, fraud, and violations of the Texas Securities Act and the DTPA cannot be tolled pursuant to *Hughes. See id.* .

■ Even if we were to consider tolling of limitations in the context of Ponder's legal malpractice claim, we would hold that *Hughes* is inapplicable. As aptly stated by the *Hoover* court, *Hughes* provides a narrow exception to the application of limitations "when a malpractice suit is brought against an attorney in the course of litigating the complainant's underlying claim." *Hoover,* 835 S.W.2d at 675. The rationale for this exception is that "when an attorney commits malpractice while providing legal services in the prosecution or defense of a claim which results in litigation, the legal injury and discovery rules can force the client into adopting inherently inconsistent litigation postures in the underlying case and in the malpractice case." *Hughes,* 821 S.W.2d at 156. Ponder's malpractice claim is that appellees were negligent in giving incorrect legal advice. His complaint focuses on a copy of a legal opinion written by an attorney solely for his client and circulated to Ponder by a third-party.

Assuming that such conduct was legal malpractice, the malpractice did not occur **"while providing legal services in the prosecution or defense of a claim"** on Ponder's behalf. *See id.* At the time of the alleged malpractice, there was no attorney-client relationship between Ponder and appellees. In addition, at the time of the alleged malpractice and at the time Ponder discovered or should have discovered the alleged malpractice, there were no pending legal proceedings that would have put Ponder in an inconsistent litigation posture and prevented him from exercising his legal remedy. Neither Ponder nor any of his partnerships were involved in any litigation with the IRS. In fact, the *Agro* case, was not filed until June 23, 1986, three months after Ponder received the first notices of adjustment from the IRS.[3] As we noted, that case did not involve any of Ponder's partnerships. Upon the discovery of the alleged malpractice, Ponder's partnerships were merely being audited by the IRS. The IRS audit was not a judicial proceeding that forced Ponder to adopt a litigation posture inconsistent with his malpractice claim. *See, e.g., United States v. Baggot,* 463 U.S. 476, 478–82, 103 S.Ct. 3164, 3166–68, 77 L.Ed.2d 785 (1983) (holding that IRS civil tax audit is not a judicial proceeding within the meaning of federal rule allowing disclosure of matters occurring before a grand jury).

■ Ponder argues that he could not bring an action against appellees after he discovered the alleged malpractice because an attorney-client relationship existed between himself and appellees from the time of his investment. Ponder's argument is premised on the fact that his partnerships were required to contribute to a legal defense fund in preparation for a possible IRS challenge to the deductions. Ponder's argument fails. The existence of an attorney-client relation-

3. It is not disputed that the *Agro* case was filed in June, 1986. Attached to appellees' brief is the Tax Court Reporter's table of current petitions. The table lists petitions in order of docket number and shows when the petitions in the *Agro* case were filed. Although the table was not before the trial court on summary judgment, this court may, on its own, take judicial notice for the first time on appeal of a fact that is "capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned."

Tex R.Civ.Evid 201(c), (f); *Office of Public Util. Counsel v. Public Util. Comm'n,* 878 S.W.2d 598, 600 (Tex.1994); *Langdale v. Villamil,* 813 S.W.2d 187, 189–90 (Tex.App.—Houston [14th Dist.] 1991, no writ). The filing of the petitions in the *Agro* case as reflected in the Tax Court Reporter is a matter of public record and subject to judicial notice. *See Office of Public Util.,* 878 S.W.2d at 600; *see also Langdale,* 813 S.W.2d at 190. Accordingly, we take judicial notice of the fact that the *Agro* case was not filed until June 23, 1986.

ship does not, standing alone, toll limitations in a legal malpractice action. Rather, limitations in a legal malpractice action are tolled only when the attorney's malpractice occurs and/or is discovered during the course of the underlying litigation pursued on the client's behalf. *Hughes,* 821 S.W.2d at 156–57. That situation is not present in the instant case. Put simply, this not the type of case contemplated by *Hughes.*

In summary, we find that the facts of this case are analogous to those in *Hoover.* Accordingly, we hold that Ponder's causes of action accrued when he received the first notices of adjustment and that Ponder's suit is barred by the applicable statutes of limitations. We further hold that *Hughes* is inapplicable and the statutes of limitations were not tolled. Thus, Ponder's suit is barred by limitations unless he can prove fraudulent concealment.

### Fraudulent Concealment

█ Finally, Ponder argues his claim is not barred by limitations under the doctrine of fraudulent concealment. Ponder asserts that he did not, and could not, discover his cause of action until the resolution of the *Agro* case because appellees assured investors that their investment would withstand the IRS challenge and did not inform investors of the district court's opinion in *United States v. Campbell,* 704 F.Supp. 715, 730–31 (N.D.Tex.1988), *aff'd as modified,* 897 F.2d 1317 (5th Cir.1990), which held the Coral transaction to be "without economic substance" and questioned the validity of the Mankoff opinion letter.

█ Fraudulent concealment is an affirmative defense to the statute of limitations. *Weaver v. Witt,* 561 S.W.2d 792, 793 (Tex. 1977); *Work v. Duval,* 809 S.W.2d 351, 354 (Tex.App.—Houston [14th Dist.] 1991, no writ). As such, the burden was on Ponder to come forward with summary judgment proof to support his allegation of fraudulent concealment. *See id.* The doctrine of fraudulent concealment provides that where a defendant is under a duty to make a disclosure but fraudulently conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from rely-

ing on the defense of limitations until the party learns of the right of action or should have learned thereof through the exercise of reasonable diligence. *Moreno,* 787 S.W.2d at 353 n. 1; *Borderlon v. Peck,* 661 S.W.2d 907, 908 (Tex.1983).

However, the estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action. *Id.* at 909. As stated by this court:

> Even where the doctrine is invoked, a defendant is estopped from relying on the limitations defense only until such time that the party either learns of the right of action, or should have learned of the right by exercising reasonable diligence.

*Seibert,* 853 S.W.2d at 777 (citing *Borderlon,* 661 S.W.2d at 908).

As we have determined, Ponder discovered or should have discovered any potential cause of action when he received the first notices of adjustment, more than four years before he filed suit. At that time, the *Agro* case had not been filed and the district court opinion in *Campbell* had not been issued. 704 F.Supp. at 715. Thus, the doctrine of fraudulent concealment does not bar the application of limitations under the facts of this case.

Because appellees conclusively established the affirmative defense of limitations, the trial court properly granted summary judgment. We overrule Ponder's first point of error. As a result of our disposition of Ponder's first point of error, it is unnecessary for us to address his remaining points. Accordingly, we affirm the trial court's judgment.