Ruth SUTTON and William
Sutton, Appellants,

v.

Ronald M. MANKOFF; Durant, Mankoff, Davis, Wolens & Francis, P.C.; Mankoff & Hill, P.C.; and Mankoff, Hill, Held & Goldburg, P.C., Appellees.

No. 2–95–064–CV.

Court of Appeals of Texas,
Fort Worth.

Jan. 11, 1996.

Rehearing Overruled Feb. 22, 1996.

Art Brender, Fort Worth, for appellant.

C.J. Muller, Farley P. Katz, Anthony E. Rebollo, Matthews & Branscomb, San Antonio, for appellee.

Before CAYCE, C.J., and RICHARDS and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

This is a summary judgment case. Ruth and William Sutton filed suit alleging damages from deceptive trade practices and the intentional infliction of emotional distress. The defendants included Ronald M. Mankoff, three lawfirms in which he is a principal, and eight others. The trial court severed the plaintiffs' cause against Mankoff and his three lawfirms, granting those defendants a summary judgment on the ground that all causes of action the plaintiffs asserted against the Mankoff defendants were barred by the statute of limitations. We affirm.

The Suttons present nine points of error, but two are dispositive of the appeal. The first point attacks the trial court's ruling that this suit is barred by statutes of limitations, and the ninth point objects to some of the summary judgment evidence considered by the trial court.

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that movant is entitled to judgment as a matter of law. *See* TEX.R.CIV.P. 166a(c); *Cate v. Dover Corp.,* 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, *Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 301–02 (Tex.1990), and all doubts about the existence of a genuine issue of material fact are resolved against movant. *Cate,* 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Co.,* 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great Am.,* 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. *Harwell v. State Farm Mutual Auto Ins. Co.,* 896 S.W.2d 170, 173 (Tex.1995). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am.,* 391 S.W.2d at 47.

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of movant's cause of action or defense as a matter of law. *City of Houston,* 589 S.W.2d at 678. A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995); *Rosas v. Buddies Food Store,* 518 S.W.2d 534, 537 (Tex.1975). To accomplish this, the defendant-movant must present summary judgment evidence that negates an element of the plaintiff's claim. Once this element is presented, the burden shifts to the plaintiff to put on competent controverting evidence that proves the existence of a genuine issue of material fact with regard to the element challenged by the defendant. *Centeq Realty,* 899 S.W.2d at 197.

## Background

The summary judgment evidence is that in 1982, Coral Sociedade Brasileira de Pesquisase Desenvolvimento Limitada, a Brazilian company, was engaged in activities known as *monoclonal antibody research* or "MAB." This included the manufacture of monoclonal antibody conjugates. Coral received income from fees charged for this work under various medical research contracts and began selling the contracts to investors in 1981 or 1982. The equity ownership of Coral was held by a Netherlands company known as "Inpro Holding Company, B.V.," which was owned by Allen F. Campbell, a promoter of the Coral venture. In 1982, he sought legal advice for the Brazilian company from Texas attorney Ronald M. Mankoff. On behalf of Coral, Campbell engaged Mankoff and the lawfirm known as Durant, Mankoff, Davis, Wolens & Francis, to advise the Brazilian company about federal income tax deductions available to United States residents who might invest in Coral.

The investment concept was that United States residents would want to invest in partnerships created for the purpose of buying medical research contracts from Coral. Each research contract would sell for a price of $600,000. The selling price would be payable by a down payment of 1/8 cash ($75,000), plus a promissory note for the other 7/8 of the cost ($525,000). The proposal was that the promissory note would be payable in a specified number of Brazilian monetary units (cruzeiros) equal to a predetermined United States dollar value. Interest would be payable at ten percent per annum, without monetary correction or other indexing mechanism. The investor would promise to pay annually twenty-five percent of the note balance, but the initial payment would not become due until the end of the seventh year after the origin of the note. The plan was to allow time for the investors' own marketing of the medical contracts to generate funds for use in paying these notes.

A seventeen-page opinion of the Durant, Mankoff, Davis, Wolens & Francis lawfirm was issued on its letterhead, dated June 28, 1982, addressed to Coral at its Rio de Janeiro, Brazil, office.

Ruth Sutton contends she relied on that opinion in 1982, when deciding to invest in the Coral venture. The Suttons say the opinion contained misrepresentations that violated subsections (2), (5), (7) and (12) of section 17.46 of the Deceptive Trade Practices Act. Specifically, they complain of its following paragraphs:

a. the company [investor's name] should be entitled to treat the amounts which will be paid or incurred to Coral pursuant to the [investor's] Agreement as deductible expenses in the year paid or incurred, under Section 174 of the Code; and

b. the Company [investor's name] should be entitled to include in its deductible expenses under Section 174 of the Code the equivalent sum in United States Dollars of the full amount of the Research Fee which will be payable to Coral pursuant of the [investor's] Agreement.

A disclaimer in the opinion's final paragraph says:

This letter is intended for the internal use of Coral and, accordingly, it is not intended to be, and should not be, relied upon by any person or entity other than Coral.

Despite the lawfirm's disclaimer, the Suttons say the Mankoff defendants were an integral part of the plan for marketing the Coral contracts and knew the opinion would be furnished to potential investors.

The Suttons became investors in December 1982. On the recommendation of Ruth Sutton's brother, the Suttons sought advice from Donald Spear, an Arlington, Texas, financial planner, about lawful ways to reduce their federal income tax liability, and Spear suggested Coral's program as a "tax shelter" investment. Spear and his nephew, Steve Wisdom, were associated in the financial planning business, and on December 14, 1982, Wisdom went to the Suttons' store to discuss investments. Wisdom recommended that Ruth Sutton invest, by cash and promissory note, in an entity known as "R & D Partners—82," which was to enter into a medical research contract with Coral. Ruth Sutton alleges Wisdom told her the Brazilian

cruzeiro had a history of devaluation, so her actual liability on the note would be minimal by the time the note matured. She wrote a $3,269.00 check and signed a $25,500.00 demand promissory note, both payable to R & D Partners—82.

The summary judgment evidence includes Ruth Sutton's affidavit dated October 20, 1993, in which she makes the following statement:

Mr. Wisdom represented that a prestigious Dallas law firm had issued a statement representing that the Coral program was legitimate and R & D Partners—82 could deduct its expenses and fees related to the medical research contract with Coral. I relied on the validity of the legal opinion described to me by Mr. Wisdom in making my decision to become a partner. . . .

After she invested, Donald Spear mailed her a copy of the June 28, 1982 opinion letter of the Durant, Mankoff, Davis, Wolens & Francis lawfirm.

On their 1982 federal income tax return, prepared by a certified public accountant, the Suttons deducted $24,221.70 as their share of R & D Partners—82's tax deductions. Early in 1983, Ruth Sutton was visited by an Internal Revenue Service agent who copied her documents relating to Coral and R & D Partners—82. On January 25, 1985, the I.R.S. issued a notice to R & D Partners—82 proposing to disallow the partnership's 1982 and 1983 tax losses and impose penalties. I.R.S. mailed the notice to Donald Spear, requesting that he furnish responses from the individual partners.

Objections to Summary Judgment Evidence

Before turning to the trial court ruling that statutes of limitations bar the Suttons' claims, we will address their ninth point of error which attacks part of the summary judgment evidence.

In 1985, Ruth Sutton gave her deposition in the case of *United States v. Campbell,* 704 F.Supp. 715 (N.D.Tex.1988). The federal government had brought the suit against Campbell to enjoin the marketing of the Coral investment.

In point nine, the Suttons protest that the deposition is not proper summary judgment evidence because it was taken in a lawsuit other than this one and the Mankoff parties in this suit did not present a certified copy of the deposition with their motion for summary judgment. We reject that contention, because Ruth Sutton's entire deposition from the federal suit against Campbell is attached as Exhibit G to the Mankoff defendants' motion for summary judgment in this suit and is properly authenticated by an attorney present at the deposition.

On the same rationale, we reject the ninth point of error's assertion that Ruth Sutton's testimony from a United States Tax Court trial involving Coral and R & D Partnership—82 was not properly certified and therefore is not competent summary judgment evidence. That case is *Agro Science Co., Bavaro Inv. Co., Tax Matters Partner, et al. v. Commissioner,* 58 T.C.M. 1093, 1989 WL 155518 (1989), *cert. denied,* 502 U.S. 907, 112 S.Ct. 300, 116 L.Ed.2d 243 (1991). A copy of the trial transcript of Ruth Sutton's testimony is attached as Exhibit H to the Mankoff defendants' motion for summary judgment in this suit and properly authenticated by an attorney present at that trial.

Point of error number nine is overruled. *See* Tex.R.Civ.P. 166a(c); Tex.R.Civ.Evid. 901(a); *McConathy v. McConathy,* 869 S.W.2d 341, 341–42 (Tex.1994) (authentication of deposition excerpts submitted with a motion for summary judgment is neither necessary nor required); which supersedes *Deerfield Land Joint Venture v. Southern Union Realty Co.,* 758 S.W.2d 608, 610 (Tex. App.—Dallas 1988, writ denied) (attorneys may authenticate any portion of a deposition used as exhibit to motion for summary judgment).

Statutes of Limitations

The Suttons argue that the summary judgment evidence fails to disclose that they received from the I.R.S. any documents regarding tax deficiencies or adjustments, except a seven-page attachment to Ruth Sutton's affidavit in support of their reply to the Mankoff defendants' motion for summary

judgment. However, the defendants' First Set of Written Interrogatories to Ruth Sutton asked her to:

*Interrogatory No. 9:*

Describe the terms of any final, proposed or potential settlement with the Internal Revenue Service relating to or arising out of your investment in R & D Partners—82.

In a sworn answer signed on February 27, 1992, she stated that she and her husband:

received correspondence from the Internal Revenue Service dated November 15, 1985 and April 11, 1986 instructing [the Suttons] to sign and return a form 870–P, attached to the correspondence, if [we] desired to enter into a binding settlement to treat partnership items consistently with the treatment of the items on the partnership return as modified by the FPAA.

The answer shows that, at some time prior to April 11, 1986, the Suttons had received the FPAA, a "Final Partnership Administrative Adjustment," which is a deficiency notice to investment partners. *See* I.R.C. §§ 6223, 6226, 6231 (West 1989 & Supp.1995). The summary judgment evidence further is that in June, 1986, R & D Partners—82 had filed a petition in the United States Tax Court to protest and seek readjustment of the I.R.S. disallowance of partners' deductions for 1982 and 1983. A prerequisite to the Tax Court's jurisdiction over that type partnership action is that a timely petition is filed after an FPAA has been issued. *See Seneca Ltd. v. Commissioner,* 92 T.C. 363, 1989 WL 11484 (1989), *aff'd without op.,* 899 F.2d 1225 (9th Cir.1990).

While both *Agro Science* and the federal government's suit against Campbell were pending, the Suttons hired attorney Art Brender to represent them. On March 18, 1988, he wrote a letter on their behalf to Ronald M. Mankoff, Donald Spear, and Allen Campbell, stating that the I.R.S. had determined that the Suttons' partnership investment was a fraudulent tax shelter. Brender's letter demanded that Mankoff, Spear, and Campbell pay the Suttons $500,000 in damages, plus attorney fees, else the Suttons would sue them for deceptive trade practices and mental anguish and suffering.

Campbell's federal trial resulted in that court's September 19, 1988 memorandum opinion finding as facts that no meaningful biomedical research ever took place in Brazil, that the research actually conducted lacked scientific intent, and the cruzeiro [debt] was a sham which, because it was totally devoid of economic substance, could not be deductible. The court enjoined Campbell's further promotion of the investment.

On October 15, 1990, the I.R.S. sent the Suttons a statement of change indicating they owed the I.R.S. an additional $26,574.52 in taxes and interest for the 1982 tax year. They now contend this was their first knowledge that they had been damaged by the acts they attribute to the Mankoff defendants. On November 20, 1991, the Suttons filed the present lawsuit against the Mankoff defendants and others.

The statute of limitations applicable to actions for deceptive trade practices is section 17.565 of the Texas Business & Commerce Code. TEX.BUS. & COM.CODE ANN. § 17.565 (Vernon 1987). It bars any suit not brought within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the act of reasonable diligence should have discovered the occurrence. The statute provides an extension of 180 days beyond the two years upon proof that the defendant knowingly engaged in conduct solely calculated to induce the plaintiff to refrain from or postpone suit.

The statute of limitations applicable to actions for intentional infliction of emotional distress is section 16.003 of the Texas Civil Practice & Remedies Code. TEX.CIV.PRAC. & REM.CODE ANN. § 16.003 (Vernon 1986 & Supp.1996). It bars any suit brought later than two years after the day the cause of action accrues.

Point of error number one is that the trial court erred in granting the Mankoff defendants' summary judgment on the ground that the Suttons' causes of action were barred by limitations. They contend their cause of action against the Mankoff defendants did not accrue until the Suttons suffered a legal injury; and legal injury did not occur until September 21, 1990, when the I.R.S. sent the

Suttons form 4549–A which notified them of adjustments to their federal income tax return.

■ The Suttons cite *Atkins v. Crosland,* 417 S.W.2d 150 (Tex.1967) for the proposition that no cause of action accrues until a tort actually causes injury, and that the statute of limitations does not start to run until a cause of action has accrued. *Id.* at 152–53. However, the holding of *Atkins* was unique to its facts and an exception to the general rule. The general rule is that a cause of action sounding in tort accrues, in the absence of a statute to the contrary or fraudulent concealment, when the tort is committed. *Id.; Ponder v. Brice & Mankoff,* 889 S.W.2d 637, 641 (Tex.App.—Houston [14th Dist.] 1994, writ denied).

Atkins had sued the person who prepared his income tax return for negligently basing tax liability on the accrual method of accounting instead of the cash method. The *Atkins* court reasoned that the accountant's method was not unlawful in itself; therefore, injury to Atkins was not inevitable; thus the tort was not completed and no cause of action accrued until the commissioner of internal revenue actually assessed a deficiency; and the statute of limitations did not start to run until the assessment created a cause of action. *Atkins,* 417 S.W.2d at 153.

The *Atkins* court carefully limited its opinion to the facts of the case presented, by citing another principle:

> *If, however, the act* of which the injury is the natural sequence *is of itself a legal injury* to plaintiff, *a completed wrong,* the *cause of action accrues* and the *statute begins to run from the time the act is committed,* even where little, if any, actual damage occurs immediately on commission of the tort. *See Tennessee Gas Transmission Co. v. Fromme,* 153 Tex. 352, 269 S.W.2d 336 (1954).

*Atkins,* 417 S.W.2d at 153 (emphasis added).

■ In our case, the Suttons attribute their damages to knowing and unconscionable misrepresentations by the Mankoff defendants, which, if proven, are deceptive trade practices and inherently unlawful at inception. The Suttons characterize that conduct

as intentionally inflicting emotional distress upon them. We hold that each of the Suttons' causes of action ask damages for acts that were completed wrongs that caused legal injury to the claimants when the acts occurred.

The Mankoff parties argue that as a general rule in cases where a taxpayer seeks damages for wrongs alleged to have caused increased income tax liability, the taxpayer's cause of action accrues on a fact specific basis when he discovers a risk of harm to his economic interests, whether that be at the time of assessment or otherwise. We agree. *See Ponder,* 889 S.W.2d at 642–43; *Hoover v. Gregory,* 835 S.W.2d 668, 671 (Tex.App.— Dallas 1992, writ denied).

We hold that on the summary judgment evidence, the Suttons discovered, or should have discovered, on or before March 18, 1988, that they had a cause of action against the Mankoff defendants for deceptive trade practices and related conduct. The Suttons' attorney asserted those grievances by letter on March 18, 1988 and demanded monetary damages, but they did not file suit until November 20, 1991. When they filed suit, its prosecution was barred by the statutes of limitations. *See Ponder,* 889 S.W.2d at 637.

The Suttons' argument that the statutes of limitations were tolled until the resolution of *Agro Science* is not persuasive. The Suttons contend that R & D Partners—82 contributed money to a medical research legal defense fund which was used to underwrite the cost of litigating *Agro Science;* that Ruth Sutton was an investor in the partnership; that the Mankoff defendants were attorneys for the fund; that an attorney-client relationship existed between the partnership and the Mankoff defendants; therefore, the Suttons are entitled to assert an attorney-client relationship between themselves and the partnership attorneys.

We recognize that a lawyer hired to represent an entity, represents the organization, not its members individually. Tex.Disciplinary R.Prof.Conduct 1.12(a), (e) (1989), *reprinted in* Tex.Gov't Code Ann., tit. 2, subtit. G app. (Vernon Supp.1996) (State Bar Rules art. X, § 9). The summary judgment

evidence is that in June 1986, Ruth Sutton engaged the services of attorney Art Brender to represent her and her husband in the Coral matters, because she did not want to be represented by the partnership's attorney, William Bailey.

We take judicial notice that *Agro Science* was filed in the United States Tax Court on June 23, 1986. *See Ponder,* 889 S.W.2d at 644 n. 3. The Suttons argue that the purpose of the suit was to test the I.R.S. denial of tax deductions by the investors in R & D Partners—82. They say the existence of that suit prevented them from exercising their legal remedies against the Mankoff defendants. They contend *Agro Science* was a claim underlying their right to assert a lawyer malpractice claim against the Mankoff defendants, and the Suttons rely on *Hughes v. Mahaney & Higgins,* 821 S.W.2d 154 (Tex. 1991) as authority for the principle that tolls a statute of limitations on a lawyer malpractice claim until the underlying litigation is completed, including all appeals. *Id.* at 157.

■■■ But, *Hughes* makes clear that the principle does not impose tolling unless the lawyer malpractice has occurred in the prosecution or defense of a claim and the underlying litigation is on that claim. *Id.; Ponder,* 889 S.W.2d at 644. The claim the Suttons assert against the Mankoff defendants is one alleged to have arisen prior to and at the time of Ruth Sutton's 1982 investment in the Coral program. It is not a claim for lawyer malpractice that occurred during the prosecution and appeal of *Agro Science,* which began in 1986 and ended in 1991. The summary judgment evidence supports the conclusion that, as a matter of law, neither Mankoff nor his lawfirms were attorneys for the Suttons. We hold that the statutes of limitations were not tolled for the Suttons' claims.

There is no summary judgment evidence that the Mankoff parties fraudulently concealed their conduct from the Suttons or that the Mankoff parties knowingly engaged in conduct solely calculated to induce the Suttons to refrain from or postpone suit. We hold the summary judgment evidence presents no genuine issue of material fact on the applicability of the statutes of limitations, and that the Mankoff parties conclusively

established their affirmative defense of limitations in the trial court. As a matter of law, the Mankoff defendants were entitled to summary judgment that prosecution of the Suttons' claims against them is barred by statutes of limitations.

Point of error one is overruled, so we need not address points two through eight. The judgment is affirmed.