LeGrand v. Post and Lubke 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00339-CV







Robert H. LeGrand, Jr., M.D., Individually and as Trustee of the


Robert H. LeGrand, Jr., M.D., P.A. Money Purchase Pension Plan


and Trust; and San Angelo Neurosurgical Association, Appellants



v.



Robert P. Post, Berry & Post, Attorneys at Law, Norman Lubke, and


Armstrong, Backus & Baker, Certified Public Accountants, Appellees







FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT


NO. A-94-0671-C, HONORABLE ROYAL HART, JUDGE PRESIDING








 San Angelo Neurosurgical Association and Robert H. LeGrand, Jr., individually
and as trustee of the Robert H. LeGrand, Jr., M.D., P.A. Money Purchase Pension Plan and
Trust (collectively "Association"), appellants, sued attorney Robert P. Post, Berry & Post,
Attorneys at Law ("collectively "Post"), accountant Norman Lubke, and Armstrong, Backus, &
Baker, Certified Public Accountants (collectively "Lubke"), appellees, for legal malpractice,
accounting malpractice, and other related claims. The district court granted Post's and Lubke's
motions for summary judgment on the ground that the Association's causes of action were barred
by the two-year statute of limitations. See Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West
1986). On appeal, the Association raises four points of error contending that summary judgment
was improperly granted. We will affirm.

FACTUAL AND PROCEDURAL BACKGROUND


 The Association established and adopted a "pension plan and trust" ("Plan") on
January 1, 1978. The Plan was qualified pursuant to section 401(a) of the Internal Revenue Code
of 1954 and established as a retirement plan under the Employee Retirement Income Security Act
of 1974 (ERISA). See 29 U.S.C.A. §§ 1001-1461 (West 1985 & Supp. 1995). LeGrand was
both a participant in and a trustee of the Plan. Post and Lubke were retained by the Association
from 1978 through 1989 to review the Plan and ensure that it remained properly qualified under,
and in compliance with, federal laws.

 In 1989, LeGrand engaged the law firm of Smith, Carter, Rose, Finley, &
Hofmann ("Smith Firm") to maintain the qualified status of the Plan. In a letter dated October
10, 1991, Robert Paul, "employee plans specialist" with the Internal Revenue Service, informed
the Association that the Plan had not been amended to meet the requirements of the Retirement
Equity Act of 1984 and the Deficit Reduction Act of 1984. Therefore, Paul told the Association
that its Plan had not been qualified for the plan years (the fiscal period during which a retirement
trust accounts to participants and governmental agencies for its activities) ending December 31,
1985 through December 31, 1990.

 After consulting with Post, Lubke, and Paul, the Smith Firm on November 19,
1991 confirmed in writing to LeGrand that the Plan had indeed not been qualified pursuant to the
1984 federal acts, and thus could face a tax liability of up to $155,000. The Smith Firm further
stated that unless the Association entered into a "closing agreement," the Plan would be
disqualified for those years. Pursuant to section 7121 of the Internal Revenue Code, a closing
agreement allows the employer to avoid disqualification by agreeing to correct its plan's defects
and pay a penalty based on the tax liability that would have existed if the plan were disqualified. 

 On January 2, 1992, Michael Mehl, "qualification resolution agent" with the
I.R.S., apprised the Association that its Plan had not been amended to meet the requirements of
the Tax Equity and Fiscal Responsibility Act of 1982, as well as the 1984 acts. Thus, the Plan
was non-qualified for all plan years beginning after December 31, 1983. Mehl also informed the
Association that disqualification could be avoided if a closing agreement could be reached. The
Smith Firm relayed this information to LeGrand on January 8, 1992. The Smith Firm also
mentioned that they would seek settlement possibilities with Mehl to prevent disqualification. On
June 10, 1992, the Smith Firm advised LeGrand to accept a $65,000 settlement offer made by the
I.R.S.

 The Association executed an agreement August 17, 1992 and made its settlement
payment on September 4, 1992. The Plan was formally qualified September 18, 1992.

 The Association filed suit on June 17, 1994 against Post and Lubke to recover the
penalties paid pursuant to the closing agreement, as well as other legal and accounting fees
incurred. The trial court granted Lubke's and Post's motions for summary judgment on the
ground that all of the Association's claims were barred by limitations.



DISCUSSION


 The standards for reviewing a summary judgment are well established:



1. The movant for summary judgment has the burden of showing that there is
no genuine issue of material fact and that it is entitled to judgment as a
matter of law.


2. In deciding whether there is a disputed material fact issue precluding
summary judgment, evidence favorable to the non-movant will be taken as
true.


3. Every reasonable inference must be indulged in favor of the non-movant and
any doubts resolved in its favor.



Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). To prevail on
summary judgment, a defendant must conclusively prove all the elements of an affirmative defense
or negate as a matter of law one or more essential elements of the plaintiff's cause of action such
that there is no genuine issue of material fact. Gibbs v. General Motors Corp., 450 S.W.2d 827,
828 (Tex. 1970). When a defendant moves for summary judgment based on the affirmative
defense of limitations, the defendant assumes the burden of showing as a matter of law that the
suit is barred by limitations. Rogers v. Ricane Enters., Inc., 772 S.W.2d 76, 80-81 (Tex. 1989).

 The "discovery rule" applies to legal malpractice claims, meaning that the statute
of limitations begins to run when "the claimant discovers or should have discovered through the
exercise of reasonable care and diligence the facts establishing the elements of his cause of
action." Willis v. Maverick, 760 S.W.2d 642, 646 (Tex. 1988). There is also authority for the
proposition that the discovery rule applies to accounting malpractice. See Woodbine Elec. Serv.,
Inc. v. McReynolds, 837 S.W.2d 258, 262 (Tex. App.Eastland 1992, no writ). We will assume
without deciding that it does.

 The Association argues that its claims were timely filed because it was not injured
until the closing agreement between the Association and the I.R.S. had been executed on August
17, 1992. We disagree.

 The Association cites several taxpayer cases in which courts have addressed what
circumstances are sufficient in that context to trigger the running of limitations. See Atkins v.
Crosland, 417 S.W.2d 150, 153 (Tex. 1967); Hoover v. Gregory, 835 S.W.2d 668, 674 (Tex.
App.Dallas 1992, writ denied); Ponder v. Brice & Mankoff, 889 S.W.2d 637, 642 (Tex.
App.Houston [14th Dist.] 1994, no writ). Strictly speaking, Atkins was not a discovery-rule
case, but a legal-injury-rule case; i.e., the issue was when a force previously put in motion by the
defendant ripened into an invasion of some personal or property right of the plaintiff. In
determining when the plaintiff had suffered a "legal injury," the court held that in the context of
that accounting-malpractice case, it was when the I.R.S. assessed the plaintiff with a tax
deficiency. Unlike the present case, however, there is no indication in Atkins that, before
assessing the tax deficiency, the I.R.S. had ever given the plaintiff any indication of his impending
tax liability. Thus, Atkins does not support the proposition that in a tax dispute limitations can
never begin to run until the I.R.S. formally assesses a tax deficiency.

 The court in Hoover held that, under the particular facts of that case, limitations
began to run when the taxpayer received a "notice of adjustment" from the I.R.S. 835 S.W.2d
at 674. The court in Ponder held that, under the particular facts of that case, limitations began
to run when the taxpayer received a "notice of deficiency" from the I.R.S. 889 S.W.2d at 642. 
The important holding of those cases, however, was the general rule that they construed Atkins
to establish: "We . . . read Atkins as establishing a general rule that a taxpayer's cause of action
accrues on a fact specific basis when he discovers a risk of harm to his economic interests,
whether that be at the time of assessment or otherwise." Hoover, 835 S.W.2d at 673; accord
Ponder, 889 S.W.2d at 642. 

 We agree with the general rule stated in Hoover and Ponder. See Zidell v. Bird,
692 S.W. 2d 550, 554-57 (Tex. App.Austin 1985, no writ); see also Bankruptcy Estate of
Rochester v. Campbell, 910 S.W.2d 647, 651 (Tex. App.--Austin 1995, n.w.h.). In the present
case, therefore, the sole issue is whether the summary-judgment evidence conclusively
demonstrates that by June 17, 1992 (two years before suit was filed) the Association knew or
should have known that Post's and Lubke's failure to timely amend the Plan caused a risk of harm
to the Association's legally protected economic interests.

 The undisputed summary-judgment evidence shows that before June 17, 1992 the
Association had ample notice of a specific and concrete risk of harm to its economic interest to
trigger the statute of limitations. First, the I.R.S. notified the Association as early as October 14,
1991 that the Plan was subject to disqualification. Second, by November 1991, after consulting
with Post, Lubke, and the I.R.S., the Smith Firm verified that the Plan had not met the
requirements of federal laws passed in 1984. At that point, the Smith Firm told the Association
that it could face up to $155,000 in tax liability for the plan being disqualified for the plan years
1985-1989. Third, on January 2, 1992, the I.R.S. confirmed that the plan was not qualified. The
I.R.S. stated that it would be willing to enter into a closing agreement to keep the Plan qualified,
as well as negotiate the tax penalty. Finally, on June 10, 1992, the Smith Firm recommended that
the Association enter into a closing agreement it had negotiated with the I.R.S., wherein the
Association would have to pay $65,000 in penalties. At this point, not only was the Association
aware of a concrete risk of harm to its economic interests, it even knew precisely how much it
would have to pay to avoid even greater liability.


CONCLUSION


 We hold that as a matter of law the circumstances of the present case were
sufficient that the Association should have discovered, and in fact did discover, the elements of
its cause of action against Post and Lubke before June 17, 1992. Therefore, we overrule all of
the Association's points of error and affirm the trial court's judgment.



 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Jones and B. A. Smith

Affirmed

Filed: March 27, 1996

Do Not Publish



, 642 (Tex.
App.Houston [14th Dist.] 1994, no writ). Strictly speaking, Atkins was not a discovery-rule
case, but a legal-injury-rule case; i.e., the issue was when a